As it is possible that the plaintiff's counsel may have been misled by the decision in Genett *v.* Tallmadge (11 *How. Pr. R.*, 366), I grant this motion without costs.

# ROBERTS *a.* THE MAYOR, &c., OF THE CITY OF NEW YORK.

*Supreme Court ; Brooklyn Special Term, June,* 1857.

MUNICIPAL CORPORATION. — APPROPRIATIONS. — INJUNCTION. — COUNSEL FEES.

In a suit to restrain a municipal corporation from paying money out of the treasury under a resolution claimed to be illegal, the court will not review the propriety of the resolution as passed.

To sustain an injunction, it must be made to appear that the appropriation was beyond the power of the corporate authorities by whom it was passed.

The corporation of the city of New York are not liable for the fees and charges of counsel, other than the corporation counsel, and not employed by direction of the Common Council, for services rendered in suits in which the corporation are interested ; and not being liable for them, they cannot assume them, nor can the Common Council lawfully appropriate money to pay them.

The case of Rawson *a.* The Mayor, &c. (4 *Ante*, 342), to the same effect, approved.

Where moneys are appropriated by vote of the legislative body of a municipal corporation for two purposes, one of which is lawful, and the other unlawful, the courts will, if it is practicable so to do, distinguish between the two objects, so as to sustain the appropriation, so far as it is for a lawful purpose, and to enjoin only the expenditure for that which is unlawful.

But where the appropriation made is of one sum in gross, in such a way that the

court cannot determine how much was intended for the lawful object, how
much for the other, the entire appropriation will be held void.

Of the analogy between an act of legislation appropriating funds for objects
partly legal, partly illegal, and a contract based on considerations, some of
which are lawful, while others are not so.

Motion to modify an injunction.

This was an injunction suit brought by Richard S. Roberts
against the Mayor, Aldermen, and Commonalty of the city of
New York.

The complaint stated that the plaintiff was a resident of Kings
county, and was owner of real property in the city of New
York, on which he paid taxes; that the Legislature of the State,
at its last previous session, passed the act known as the Metro-
politan Police Act, which was, as plaintiff was advised and be-
lieved, the law of the land; that Fernando Wood, mayor of the
city, had, with a view to obstruct and prevent the execution of
that statute, caused to be commenced certain suits against the
Commissioners appointed by the act; that his proceedings therein
were factious, of evil example, &c.; that the expenses of these ac-
tions had been incurred by Wood, with the expectation that the
same would be reimbursed out of the treasury, and so involun-
tarily by the tax-payers of the said city; that as the plaintiff
believed, at the instance and by the procurement of Wood, the
municipal councils of the said city, in both boards thereof, by
resolutions passed on or about the 27th and 28th days of April,
1857, appropriated the sum of $10,000, to be applied to the ex-
penses of the said actions, in the employment of counsel and
otherwise, and in the prosecution of other actions contemplated
by the said Wood, to obstruct the execution and administration
of other acts relating to the said city, passed by the said Legis-
lature at the last session thereof, which appropriation the plain-
tiff charged was illegal.

The complaint concluded by stating that the plaintiff filed his
complaint on behalf of himself and of all other persons, tax-
payers of the said city of New York, who might come in and
contribute, or otherwise become parties to or be affected by the
action; and by praying that an order in the nature of an injunc-
tion might be made, restraining the said mayor, aldermen, and
commonalty of the city of New York, and the officers and

agents of the said corporation respectively, from paying the whole or any part of the said sum of money for or on account of any of the purposes contemplated or expressed in the said resolutions, passed by the Board of Councilmen, April 27, 1857, and by the Board of Aldermen on the 28th day of April, 1857, for other or further relief, &c.

The answer of the defendants denied several of the allegations of the complaint, but admitted the passage of the resolutions (setting them forth as quoted in the opinion of the court below), and averred that defendants were authorized to pass such and similar resolutions, and that the object of them was a legal one, and the appropriation of moneys therefor a just and necessary exercise of their discretion and powers in the premises. The answer also alleged that it was not the intention or purpose of defendants, in the passage of the said resolutions, to authorize the payment of any services in any suit brought by the mayor in his capacity as mayor or tax-payer, or in any capacity except as directed by the Common Council, and then only under the advice and by and through the counsel to the corporation.

A preliminary injunction having been granted, the defendants now moved, on the pleadings and on certain affidavits, the substance of which is stated in the opinion, that the injunction be so modified as to leave the corporation of New York at liberty to apply so much of the money appropriated as they might find necessary to obtain legal opinions affecting the constitutionality of the laws passed by the Legislature, which related to the city of New York.

*Richard Busteed*, corporation counsel, for the motion.

*Joshua M. Van Cott*, opposed.

BIRDSEYE, J.—Section 7 of the "Act to amend the Charter of the City of New York," passed April 2, 1849 (*Laws of* 1849, 280, *ch.* 187), requires that all appropriations of money from the city treasury "shall be based upon specific and detailed statements, in writing, of the several heads of departments through the comptroller." It is objected to the present motion that the counsel to the corporation did not transmit to the Common Council any such statement in writing as a basis for the appropriation made in the resolution of that body men-

tioned in the complaint and injunction in this case. From the papers on this motion, it is rendered very probable that no such statement was furnished. But the absence of such a statement as a basis for the appropriation, was not averred in the complaint or affidavit on which the injunction was issued. The defendants were not called upon to meet any such allegation. And although it now appears that the counsel for the corporation gave advice orally to the members of the Common Council on the subject of this appropriation, it does not positively appear but that the specific statement in writing required by the statute may also have been duly made through the comptroller. It is, therefore, unnecessary now to inquire whether a failure to comply with this prescribed formality of legislation renders the act of the Common Council void.

The ground upon which the injunction was originally issued was, that the appropriation, as made, was contrary to law. If, on examination, that objection to the appropriation proves well founded, the injunction must stand; if not, it must be dissolved. The further ground for the injunction laid in the complaint, viz., that the proceedings of the mayor, in aid of which the appropriation was made, were factious, of evil example, &c., is not such as I feel willing to act upon, or even to examine. If the legislative authority of the city have, in *any* case, the power to make an expenditure like that now under examination, I disclaim all power to revise the *propriety* of their action in this particular case. It is for them to decide upon the necessity of the expenditure, and whether its tendency will be good or evil; whether it will disturb the public peace, and be injurious to the citizens or tax-payers of the city, or otherwise. All such considerations as these are to be urged upon the Common Council, while the resolution is in progress of adoption. After adoption, the only question for the court is, as already said, the one of *power;* and that, not merely as to this particular act, but the power to pass any similar enactment, upon whatever subject, but presenting the same features as the present one.

It is to be remarked that, upon the argument of the motion, no question was made as to the plaintiff's right to maintain this action, and it has, therefore, not been examined.

To a proper examination of the question presented, it is necessary to revert to the resolutions making the appropria-

tion, and to some of the facts which are shown by the affidavit of the counsel to the corporation to have attended their passage.

As finally enacted, the resolutions, with the preamble accompanying them, were in the following language :—

" *Whereas*, It is represented that the Legislature of this State has, during the present session, passed various acts relating particularly to the city of New York ; and

" *Whereas*, It is represented that many of said acts are calculated to, and do impair and interfere with the property, rights, franchises, privileges, and powers of the corporation of the city of New York ; and

" *Whereas*, The said acts were passed without the application or assent of said corporation ; therefore

" *Resolved*, That the counsel to the corporation be and is hereby requested to report to the Common Council, without delay, what acts have been so passed by said Legislature, setting forth copies thereof.

" *Resolved*, That if he deem it necessary, the said counsel be authorized and empowered to consult and advise with such other counsel as he shall see fit, touching the validity and effect of the said several acts, and each of them, and present to the Common Council an opinion in detail in regard thereto.

" *Resolved*, That the sum of $10,000, or so much thereof as may be necessary for this purpose, be and the same is hereby appropriated to pay the charges of such additional counsel as the counsel to the corporation may see proper to associate with himself for the purpose aforesaid, and for the purpose of defraying the expenses of any suit or suits which have been commenced or may hereafter be commenced by the mayor, to test the validity or constitutionality of the recent acts of the Legislature referred to."

These resolutions, as required by section 4 of the act of April 12, 1853, chapter 217, further amending the charter of the city of New York, originated in the Board of Councilmen, and were passed by them and sent to the Board of Aldermen for concurrence. As thus passed by the councilmen, the sum appropriated was $5,000, and the only purpose to which that money could be appropriated was the payment of the charges of the additional counsel to be associated with the counsel to the cor-

poration, pursuant to the resolutions. The Board of Aldermen amended the last resolution by increasing the appropriation to $10,000, and by adding the last clause of the last resolution in the following words: "And for the purpose of defraying the expenses of any suit or suits which have been commenced or may hereafter be commenced by the mayor, to test the validity or constitutionality of the recent acts of the Legislature referred to."

As thus amended, the resolutions were passed by the Board of Aldermen; the amendments were concurred in by the Board of Councilmen, and the resolutions were approved by the mayor.

The present motion is for such a modification of the injunction originally issued in this case, as to permit the payment of the charges of the additional counsel to be employed by the counsel for the corporation. But no application is made for the entire dissolution of the injunction, or for any such modification of it as shall permit the payment of any moneys for the purpose of defraying the expenses of any of the suits mentioned in the amendment to the resolution. These suits, it sufficiently appears on the present motion, were not instituted or conducted by or under the direction of the counsel to the corporation, nor by the direction of the Common Council, but independently of both, and by attorneys and counsel not employed by the city, or in any way responsible to it for the manner in which they shall perform their duties. If the city authorities can thus assume to defray the expenses of these suits, I do not see why they may not do the same for every suit which may be prosecuted or defended by any citizen of the city or county, in the event of which the Common Council may declare that the city has or may have any interest.

Since the issuing the injunction in this case, the question of the liability of the city of New York for the expenses of suits at law involving its interests, but not conducted by or under the control of its own counsel, the proper head of its Law Department, has been examined by Mr. Justice Davies, in the case of Rawson a. The Mayor, &c., of New York (4 *Abbotts' Pr. R.*, 342). The principles established in that case clearly show that the Common Council cannot do what they have undertaken to do by the amendment made in these resolutions by the Board of

Aldermen. It is sufficient here to refer to the convincing discussion of the point in that case. I entertain no doubt that the corporation of New York were not legally liable for any of the expenses of any of the suits mentioned in these resolutions as finally passed; and that, not being liable, they can no more assume them, and appropriate money to pay them, than they could do the same as to any other suit the mayor ever had occasion either to bring or to defend. Indeed, if the Common Council can thus assume and pay the debt incurred by the mayor, by reason of the commencement of the suits referred to in the resolution, there seems to be no limit to their power thus to expend the moneys of the city. They may, equally well, assume and pay any and every other private debt of any other officer of the corporation, or of any inhabitant of the county.

It was upon this view, doubtless, and the authority of the case of Rawson a. The Mayor, &c., of New York, that the present motion was made, not for the dissolution, but for the modification of the injunction. I did not understand the counsel for the defendants to deny that the appropriation, so far as it purports to authorize the payment of any part of the sum appropriated to the defraying of the expenses of the suits brought or to be brought by the mayor, is contrary to law, and void. He contends, however, that the other purpose of the appropriation is legal and valid, and that the court ought not to restrain the payment of the money thus appropriated to that object.

On the part of the plaintiff it is contended that the appropriation, being of a sum in gross to several objects, some of which are bad, it cannot be apportioned. It cannot stand as an appropriation of $10,000 to such one or more of the several objects referred to as may be deemed lawful.

This position presents the main question in the case. It is, when stripped of all extraneous matter, a simple one, and may be thus stated: Where a legislative body of limited powers attempts to accomplish, by a single enactment, two distinct purposes, one of which is *within* and the other is *beyond* its powers, is the act sought to be done void in the whole, or only so far as it exceeds the powers conferred on the Legislature?

It was contended on the argument by the defendant's counsel, and, in my judgment, the position is correct, that the rules of construction applicable to the interpretation of statutes should

be applied to these resolutions, and that a liberal construction should be adopted—one which would rather uphold than make void the instrument propounded for examination. The case may be, therefore, properly treated as if a statute of the State was the subject of discussion. If, then, the State Legislature should, by a single provision of law, appropriate a sum of money to the payment, without discrimination, of two different classes of expenditure, one of which is legal and valid, and the other is unconstitutional and void, would the law be valid in part and void in part, or would it be void in the whole?

The answer to this question will depend on the answer to be given to a previous one, viz.: Is the appropriation an entire one —that of a gross sum for the illegal as well as the legal purpose —or is it distinct, capable of division, so that the legal purpose may be accomplished without promoting any illegal one? If it is of the latter class, I entertain no doubt that the law would be valid. If the defendant had, by these resolutions, appropriated $5,000 to pay the charges of the additional counsel to be employed by the corporation counsel, and a further sum of $5,000 to defray the expenses of the suits therein mentioned, it would be easy to separate the legal from the illegal, and the first part would stand, while the other would be clearly void.

But the appropriation *is* of $10,000, as a single sum, to two purposes, one of which is good, the other bad; and no part of the money is devoted specifically to either purpose. If the court had not interfered to restrain the payment of these moneys, and if the disbursing officers of the city had concurred in the views of the Common Council as to the legality of these resolutions, it is plain that the whole appropriation, or all but a mere fraction of it, might have been expended for the illegal purpose. It seems obvious, also, that as an additional sum was given when the illegal object of expenditure was added, the whole $10,000 was not designed to be applied to the legal object. The coupling of the illegal with the legal purpose has therefore placed at the discretion of the disbursing officer a larger sum, in this case apparently double the sum, which would have been committed to him for the legitimate purpose alone.

In regard to contracts, the rule of law is well settled, that if any part of the *entire* consideration for a promise, or any part of an *entire* promise not in its nature capable of separation, be

illegal, the whole agreement is void (*Chitty on Contr.*, 673; 1 *Parsons on Contr.*, 380, 382).

Although the resolution in question is not strictly a contract, it has some of the same elements; and some analogies may be gathered from that source which will, I think, tend to throw light on the point here presented.

Suppose the defendants, by these resolutions, had agreed to pay this sum of $10,000 to a person named, as a compensation to him for procuring the advice and opinions of the additional counsel to be employed by the corporation counsel, *and* for defraying the expenses of the suits mentioned in the resolution. I think such a contract would have been wholly void. It would be an *entire* promise, a promise to do one single and entire thing, viz., to pay the sum of $10,000. The objects thus contracted for would indeed be twofold, and one part would be good while the other would be bad. But the thing which the promisor would bind himself to do would still be *entire*. And the performance of the promise, the doing of the thing promised, would accomplish the illegal as well as the legal object. If so, I cannot see how the agreement could stand.

These resolutions, however, instead of being a mere contract to pay, either create, or lay the foundation for, the obligation to pay, while at the same time they set apart the money for the purpose of paying, and direct its application to that purpose. It seems not unreasonable to say that the defendants cannot apply money to the payment of a debt which, from its nature, they could not legally bind themselves to pay. And that, where the obligation to make payment is so far mingled with illegal matters as to be void, there the ordinance directing the moneys to be applied to satisfy such an obligation is equally void.

The foregoing view relates to the operative part of these resolutions, which may be likened to the stipulating or promising part of a contract. I think the same conclusion will be arrived at, perhaps, with greater certainty by another process.

To every contract it is essential that there should be a consideration, which, as above stated, must not be illegal. One, and perhaps the broadest and best definition of the consideration for a contract, is: The reason which moves a contracting party to enter into an agreement (*Webster's Dict.*). Chitty

(*Contr.*, p. 27) speaks of the consideration as the motive or inducement to make the promise. Parsons (1 *Contr.*, 355) says the consideration is the cause of the contract. This reason, or motive, or inducement, or cause, must, it is agreed on all hands, be free from illegality in the case of a contract. I think it is clear that if any distinct cause, or motive, or inducement can be seen to lead to the exercise of a legislative power, though it is not in strict, or perhaps in any terms a contract, yet such cause, or motive, or inducement must be equally free from illegality. In the case of these resolutions, the motive, or cause, or inducement which leads to the appropriation, is the belief, on the part of the Common Council, that the sum of money appropriated is, or may be, necessary for the purposes to which it is devoted, and that those purposes are such as the law sanctions, or at least has not forbidden. Upon the view or consideration of this fact, or supposed fact, the legislative body must have acted in passing these resolutions. If the *inducement*, or any material and inseparable part of the inducement, which led to the passage of the resolutions, was merely an inducement to violate the law, why should not that fact render void the resolutions, as properly as the same element in the consideration of a contract renders that void? It is as much the duty of the municipal councils of a city to conform to the laws of the State, and of the Legislature of the State to conform to the fundamental law, in the exercise of their legislative functions, as it is the duty of individual citizens in their dealings to do the same. If the courts of law can, as is well settled, examine the acts of the citizen, and declare those void which have thus arisen from such an impure motive or illegal inducement, why can they not do the same as to the resolutions in question, though they partake more of the character of a law than of a contract? The only ground of principle on which a contract has been allowed to be impeached for the illegality of its consideration, is that it is for the benefit of the public, and prevents further and future infractions of the law, to declare every such agreement void. Does not the same reason exist in a case like the present?

It may, at first, seem that this view of the point under consideration is rather specious than solid. But, if the history of the passage of these resolutions does not show the contrary, it is easy to suppose a case that will do so. The resolutions, as pro-

posed and passed by the Board of Councilmen, were legal and valid. But, as appears from the affidavits on the part of the defendants, they were twice rejected by that Board on as many different days, and finally passed only when put for the third time upon their passage. When sent to the Board of Aldermen, the resolutions remained for some time unconcurred in, and were finally passed only after the sum appropriated had been doubled, and an illegal object of expenditure had been coupled with the legitimate one already provided for. It is of course impossible for any one to assert that the resolutions could not have been passed without this addition of the illegal to the legal purpose. It did, however, pass with the addition, as it had failed to pass without it. But the sum which one branch of the city councils had deemed sufficient for the legal purpose, is now found to be doubled. It is doubled, we can scarcely doubt, with a view to the illegal purpose. If the present injunction shall stand as to the latter, and be vacated as to the other part, then the whole $10,000 may be applied to the legal purpose. But who can say that either branch of the Common Council intended to give that whole sum to the legal object, or that they would finally have agreed to appropriate even the sum of $5,000 to that alone? It may well be true that there was not an actual majority of the members of either Board in favor of the legitimate part of the proposed expenditure, and that some, perhaps an essential portion of the majority, may have been influenced in their votes by what confessedly exceeded their powers. If such a method of legislation is sanctioned in this case, it must, of course, be in all; and whenever an appropriation in a legal and constitutional form is about to be defeated in a legislative body, if a sufficient number of votes can be gained for the same by adding an illegal object of expenditure, and increasing the sum to be expended, then the passage of the law may be secured by such an amendment as that made to the resolution in question. The statement of such a proposition in a general form is a complete refutation of it. It at once becomes obvious that if a single sum of money be appropriated to several purposes, all those purposes must be legal and valid, otherwise one of these results must follow: either the money of the public may be applied wholly to the illegal purpose, or extravagant or unnecessary sums may be lavished on the legal objects of expenditure.

But it is urged that the resolution is by its own terms divisible; that the amendment allowing the sum appropriated to be used to defray the expenses of the suit brought by the mayor can be stricken out as surplusage, and effect be given to that part of the resolutions confessedly legal. It need not be remarked that this amendment, which is thus denominated surplusage, might, but for the injunction in this action, have transferred the whole sum appropriated from the city treasury to defray the expenses of the suits brought by the mayor. But, even taking this new view of the term surplusage, the argument does not meet the difficulty. That consists in the fact that there is no division of the moneys to be used for the one purpose or the other. If any part is to be applied to the legal purpose, some line must be drawn, some discretion must be exercised, some judgment must be formed upon the number of counsel to be employed, the labor to be required of them, the value of their services when rendered. Upon that point the Common Council might well judge, and, as already said, if they had declared that they thus set apart any specific portion of the whole sum appropriated, their action would have been incapable of review in this court. But the discretion confided to them on the subject cannot be exercised by the court. The judgment or determination of any other body or tribunal on this point would be as invalid as the act of the Common Council in the passage of the amendment in reference to the suits brought by the mayor. But it is also urged that there is in fact but one object or purpose to which the appropriation is to be applied, viz., to ascertain the constitutionality of the laws. That may be the ultimate design which those who framed and passed the resolutions had in view. But they proposed to accomplish that design in two distinct methods—one by taking the advice of other counsel, in addition to that of their own counsel, who is the head of the law department; the other, by assuming to defray the expenses of certain suits. Each of these methods involved distinct and separate expenses—they clearly formed distinct objects or classes of expenditure. They are blended together in a single enactment. In the words of the text-books, " the two are so mingled and bound together that they cannot be separated."

The motion to modify the injunction must be denied.