# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, MAY TERM, 1883, IN THE SIXTY-SEVENTH YEAR OF THE STATE.

No. 10,495.

SACKETT *v.* THE CITY OF NEW ALBANY ET AL.

| 88 | 473 |
|----|-----|
| 124 | 300 |
| 88b | 473 |
| 138 | 673 |
| 88b | 473 |
| 142 | 687 |
| 88b | 473 |
| 146 | 470 |
| 88 | 473 |
| 154 | 495 |
| 88 | 473 |
| Case 2 | |
| 162 | 173 |
| 88 | 473 |
| f171 | 282 |

CITY.—*Restriction as to Debts.*—*Constitutional Law.*—*Injunction.*—A city, being indebted to an amount equal to two per centum of its taxable property, is, under article 13 of the State constitution, prohibited from issuing an order on its treasury even for current expenses, where there are no funds in the treasury which may be applied to its payment, and may be enjoined from issuing such an order when one is about to be issued and no provision has been made for its payment.

From the Floyd Circuit Court.

*S. K. Wolfe* and *J. H. Stotsenburg,* for appellant.

*A. Dowling* and *J. V. Kelso,* for appellees.

NIBLACK, C. J.—On the 17th day of January, 1882, the city of New Albany, in this State, acting through its mayor, entered into a written contract with the Gamewell Fire Alarm Telegraph Company for three fire alarm strikers and five signal boxes, to be completed and placed in position by the 1st day of April, then ensuing, for the aggregate sum of $3,325.

(473)

On the 15th day of April, 1882, Charles Sackett, a citizen and taxpayer of that city, filed his complaint, verified by his oath, in the Floyd Circuit Court, making defendants thereto the said city of New Albany, the members of its common council, its mayor, treasurer and clerk and said fire alarm telegraph company, and alleging that the taxable property of said city amounted to the sum of $6,649,465; that the indebtedness of said city, at the time the contract was entered into, had reached and still constituted the aggregate sum of $390,000, being more than two per centum of the taxable property of such city; that there was no money in the treasury of said city which could be applied in payment for the fire alarm strikers and signal boxes contracted for as above stated; that said city, acting through its common council, was threatening to direct and was about to require its clerk to draw, and its mayor to sign, an order in writing on its treasurer in favor of the above named fire alarm telegraph company, for the sum agreed to be paid for the fire alarm strikers and signal boxes; that if such an order should be issued it would be in violation of the thirteenth article of the constitution of this State, and consequently void, but the order would be liable, nevertheless, to be thrown upon the market as an obligation representing an indebtedness, and in many ways to involve the city in litigation, expense and trouble. Wherefore the plaintiff demanded that the defendants might be enjoined and inhibited from issuing an order on the treasurer of said city or other written obligation on account of such fire alarm strikers and signal boxes, and all other appropriate relief.

A temporary restraining order was accordingly granted, on the same day, by the judge of the Floyd Circuit Court. At the ensuing May term the defendants moved the court to dissolve the restraining order upon the ground that the complaint did not contain facts sufficient to entitle the plaintiff to maintain such proceedings against them. They also demurred to the complaint for substantially the same cause.

The court took both the motion to dissolve the restraining

order and the demurrer to the complaint under advisement, and, by agreement of parties, entered an order continuing the restraining order in force until otherwise further ordered.

At the September term following the court sustained the motion of the defendants to dissolve the restraining order, and made an order formally dissolving it.

The plaintiff has appealed, under the provisions of section 646 of the R. S. of 1881, permitting appeals from certain interlocutory orders, and has assigned error upon the decision of the court dissolving the restraining order as above stated.

The thirteenth article of the Constitution, as adopted on the 14th day of March, 1881, and referred to in the complaint, reads as follows:

"No political or municipal corporation in this State shall ever become indebted, in any manner or for any purpose, to an amount, in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void."

To this is added a proviso, that through certain proceedings, an indebtedness to a greater amount may be incurred in time of war, foreign invasion, or other great public calamity; but the complaint showed affirmatively that the contract sought to be enjoined did not fall within any of the exceptions contained within the proviso.

The controlling question in this case is, did the averments of the complaint bring the indebtedness arising out of the contract between the city of New Albany and the Gamewell Fire Alarm Telegraph Company within the inhibition imposed by the thirteenth article of the Constitution, *supra?*

Counsel for the appellees admit that the phraseology of this article of the Constitution is broad enough, abstractly considered, to prohibit the several cities of the State from voluntarily incurring any indebtedness, without reference to the

purpose of its creation, in excess of two per centum of its taxable property, but insist that, taking into consideration the evils intended to be remedied by the adoption of the article, as well as the general condition of the municipal affairs of the State at the time of its adoption, its inhibition ought not to be construed as applicable to debts contracted on account of the current and ordinary expenses of the respective municipalities to which it refers.

The State of Illinois has a constitutional provision very similar to the one set out as above, the only material difference as applicable to this case being that in that State the inhibition extends only to all indebtedness in excess of five per centum of the taxable property of the various municipal corporations within its limits. In the case of *City of Springfield* v. *Edwards,* 84 Ill. 626, a case quite analogous to this in its essential facts, the Supreme Court of that State very aptly said :

" In considering what construction shall be given to a constitution or a statute, we are to resort to the natural signification of the words employed, in the order and grammatical arrangement in which they are placed ; and if, when thus regarded, the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the instrument, then such meaning is the only one we are at liberty to say was intended to be conveyed."

In defining what constituted an indebtedness within the meaning of the constitutional provision of that State, that court further said : " If a contract or undertaking contemplates, in any contingency, a liability to pay, when the contingency occurs the liability is absolute—the debt exists—and it differs from a present, unqualified promise to pay, only in the *manner* by which the indebtedness was incurred. And, since the *purpose* of the debt is expressly excluded from consideration, it can make no difference whether the debt be for necessary current expenses, or for something else." · It was further held in that case that where a city has made suitable provision for the

discharge of an obligation resting upon it, or has the ready means necessary to pay a claim against it, the issuance of an order upon its treasurer for the payment of such obligation or claim does not create such a debt against the city as the constitutional provision, then under consideration, was intended to inhibit.

The conclusion then reached, however, was that certain warrants issued by the city of Springfield, exceeding the constitutional limit of indebtedness, and payable at a future day, and contingently as to interest, when there were no funds in its treasury, had been unlawfully issued, and the judgment below, enjoining the further issuance of such warrants, was affirmed. This case was approved and followed by the later case of *Law* v. *People,* 87 Ill. 385.

On the 7th day of August, 1873, the city of Quincy, in the State of Illinois, by an ordinance entered into a contract with Edward Prince for the erection of water works within its corporate limits, agreeing to pay an annual sum for the use of water to extinguish fires, and a further annual sum for each fire hydrant used by the city.

. The water works were constructed in accordance with the requirements of the ordinance, and the terms of the agreement were mutually observed for several years, when the city, assuming that the contract had been entered into, on its part, without competent authority, declined further compliance with terms of the contract, and so notified Prince.

This resulted in a suit by Prince against the city for damages for a breach of the contract. The city pleaded in bar of the action that at the time of the making of the contract with Prince it was, and ever since has continued to be, indebted in an aggregate sum of more than five per centum of the value of its taxable property.

To that Prince replied that the several sums of money stipulated to be paid by the city pertained to the ordinary expenses of the government of the city and the administration

of its municipal affairs; that said several sums of money, when taken together with the other expenses necessarily incurred in carrying on the city government, were within the limits of the current revenues of the city. The court, however, sustained a demurrer to the replication.

Upon an appeal the Supreme Court of Illinois held that the demurrer to the replication was correctly sustained, and cited approvingly the cases of *City of Springfield* v. *Edwards*, *supra;* and of *Law* v. *People, supra; Prince* v. *City of Quincy*, 105 Ill. 138. See, also, *Prince* v. *City of Quincy*, 105 Ill. 215.

The State of Iowa has also a constitutional provision, limiting the indebtedness of its municipal corporations to an amount not exceeding five per centum of their taxable property, and declaring, as does the similar provision in Illinois, that no municipal corporation shall be allowed to become indebted in any greater aggregate amount *in any manner or for any purpose.*

In the case of *Grant* v. *City of Davenport*, 36 Iowa, 396, the Supreme Court of Iowa, in commenting upon the constitutional provision of that State above referred to, said: "We are not, by any means, inclined to limit or restrain the meaning of the word 'indebtedness,' as there used, so as to confine it to debts evidenced by bond or those which are due simply, but rather to give to the word its fair and legitimate meaning and general acceptation."

This rule of interpretation, as applicable to that provision, was quoted with approval in the subsequent case of *French* v. *City of Burlington*, 42 Iowa, 614, to which the court, in that case, added that "If the indebtedness is created for any purpose, it is within the constitutional inhibition."

The Supreme Court of Iowa have ruled upon questions arising under the same constitutional provision, in a considerable number of other cases, and, taking all the cases in that State bearing upon that provision together, and considering what was really decided in each particular case, they sustain

the definition and interpretation given as well as the conclusion reached in the case of *City of Springfield* v. *Edwards, supra,* to which reference has been made as above. *Dively* v. *City of Cedar Falls,* 27 Iowa, 227; *Scott* v. *City of Davenport,* 34 Iowa, 208; *Nat'l State Bank* v. *Ind. Dist.,* 39 Iowa, 490; *McPherson* v. *Foster,* 43 Iowa, 48; *Mosher* v. *Ind. School Dist.,* 44 Iowa, 122; *City of Council Bluffs* v. *Stewart,* 51 Iowa, 385; Dillon Mun. Corp. (3d ed.), sections 130–135; old sections 85–88.

If we were considering this case as one of first impression in all respects, and hence independently of the cases cited and of all other authorities having any special application to it, we would feel it to be our duty to hold that all indebtedness voluntarily created by the city of New Albany, for any purpose, in excess of two per centum on its taxable property, falls within the inhibition of the thirteenth article of our constitution. By " indebtedness," in this connection, we mean an agreement of some kind by the city to pay money where no suitable provision has been made for the prompt discharge of the obligation imposed by the agreement. It was obviously the intention of the Legislature in submitting, and of the people in adopting, the thirteenth article of the constitution, to arbitrarily restrict the power of municipal corporations to contract debts to a limited per centum of their taxable property, and to require, when that limit of indebtedness has been reached, that such corporations shall be prepared to pay for whatever of value they may obtain, without the incurrence of any further indebtedness for any purpose whatever. In this view the allegation of the complaint, that there was no money in the treasury of the city of New Albany which could be applied to the payment of the claim of the fire alarm telegraph company, was a material and pivotal allegation in this proceeding. The necessary inference from that allegation was, that, if an order should be issued on the treasurer of the city for the payment of that claim, it would become simply a debt

due from the city to be thereafter provided for, if ever paid, and which could be made to draw interest by being presented to, and properly endorsed and registered by, the city treasurer. R. S. 1881, sec. 3081.

It is further insisted by the appellees that other remedies were open to the appellant, and that for that reason, if for no other, the facts alleged did not make a case for a restraining order against them. In their assumption of that position the appellees are not supported by the authorities. On the contrary, the weight of authority is overwhelmingly against the position they thus seek to maintain. In a case like this no other remedy would be so apt, comprehensive and complete as a suit to restrain the municipal authorities from transcending the limitations placed upon them by the organic law of the State, and thus possibly involving embarrassing, if not harassing complications. Dillon Munic. Corp., sec. 914, *et seq.; City of New London* v. *Brainard,* 22 Conn. 552; *Webster* v. *Town of Harwinton,* 32 Conn. 131; *Colton* v. *Hanchett,* 13 Ill. 615; *Barr* v. *Deniston,* 19 N. H. 170; *Mayor, etc.,* v. *Gill,* 31 Md. 375; *Merrill* v. *Plainfield,* 45 N. H. 126; *Roberts* v. *Mayor, etc.,* 5 Abb. Pr. 41.

The facts averred in the complaint presented what appears to us to have been a good *prima facie* case for a restraining order against the appellees. We can not, therefore, escape the conclusion that the court erred in dissolving the temporary restraining order without cause shown, or hearing the cause upon its merits.

The judgment is reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

Howk, J., was absent when this cause was considered.