# SUPREME COURT OF JUDICATURE

##### OF THE

# STATE OF INDIANA,

### AT INDIANAPOLIS, MAY TERM, 1884, IN THE SIXTY-EIGHTH YEAR OF THE STATE.

---

### No. 10,693.

### THE CITY OF VALPARAISO ET AL. v. GARDNER.

CITY.—*Contract.*—*Ultra Vires.*—*Taxpayer.*—*Injunction.*—A taxpayer of a municipal corporation may maintain a suit to enjoin the corporate authorities from entering into an unauthorized contract.

SAME.—*Water Supply.*—*Creation of Debt.*—*Discretionary Power.*—*Limit.*— While the power of a city to contract for a supply of water for public use is, in a general sense, a discretionary one, it can not be so exercised as to create a corporate debt beyond that limited by law, nor to surrender or suspend legislative power.

SAME.—*Ministerial Act.*—The execution of a contract is a ministerial act, and may be enjoined if the contract is in excess of corporate authority.

SAME.—*Powers of Legislative Character.*—*Powers of a Business Nature.*—There is a distinction between powers of a legislative character and powers of a business nature.

SAME.—*Public Corporations.*—It is the inhabitants, and not the officers, who constitute the public corporations of the land.

SAME.—*Constitutional Law.*—*Meaning of Words.*—While courts must yield to the words of the Constitution, still, in determining what meaning they were intended to have, it is proper to consider the circumstances under which the provision was adopted and its purpose.

The City of Valparaiso *et al. v.* Gardner.

SAME.—*Indebtedness of City.*—*Constitutional Limit.*—*Current Revenue.*—The limitation in the amendment to the Constitution, adopted in 1881, to the indebtedness of any political or municipal corporation, does not apply to water to be paid for as the water is furnished, provided the contract price can be paid from the current revenues as the water is furnished, without increasing the corporate indebtedness beyond the constitutional limit, or encroaching upon funds set apart to other purposes.

SAME.—*Current Expenses.*—The items of expense essential to the maintenance of corporate existence, such as light, water, labor and the like, constitute current expenses, payable out of current revenues.

SAME.—*Corporate Debt.*—Where the current revenues are sufficient to discharge all current expenses without increasing the indebtedness, there is no corporate debt incurred for such expenses.

From the Porter Circuit Court.

*E. D. Crumpacker, H. A. Gillett* and *A. D. Bartholomew,* for appellants.

*W. Johnston,* for appellee.

ELLIOTT, C. J.—The complaint of the appellee avers that he is a resident taxpayer of the city of Valparaiso; that the municipal officers are about to let a contract to a water-works company for supplying the city with water for a period of twenty years, at an annual expense to the municipality of $6,000; that the corporate indebtedness exceeds five per centum of the assessed value of the taxable property of the city and that there is no money in the treasury. The prayer of the complaint is for an injunction restraining the corporate authorities from entering into the contract.

The appellants answered, admitting that the appellee was a taxpayer; that the city was indebted in excess of two per centum of the aggregate value of the taxable property, and averring that the city has a population of over five thousand persons and is rapidly increasing in population; that it has no facilities for extinguishing fires except three cisterns, which are wholly inadequate, and that the safety of the city demands that the contract mentioned in the complaint be entered into and a supply of water secured; that the assessed value of taxable property, as shown by the assessment roll,

amounted to $1,350,000; that from other sources than taxation the revenue of the city is $2,500 per annum; that the ordinary current expenditures are less than $6,000 per annum, and that the annual revenues of the city are sufficient to pay all the ordinary expenditures of the city and the water rent of $6,000 per annum, besides providing for the accumulation of a sinking fund, as the law requires; that the intention was that the terms of the proposed contract should be so adjusted that when the water-works were completed and an instalment of rent earned, there would be money sufficient in the treasury to pay it, derived from current revenues, and to so fix the time of the payment of future instalments that they should be within the current revenues of the city, and yet leave money sufficient to meet all other corporate expenses.

A taxpayer of a municipal corporation may maintain a suit to enjoin the corporate authorities from entering into an unauthorized contract. *Sackett* v. *City of New Albany*, 88 Ind. 473 (45 Am. R. 467); *City of Madison* v. *Smith*, 83 Ind. 502; *Noble* v. *City of Vincennes*, 42 Ind. 125; 2 Dillon Munic. Corp. (3d ed.), sec. 922.

A city has authority to make contracts for a supply of water for the public use. *City of Vincennes* v. *Callender*, 86 Ind. 184. The authority is, in a general sense, a discretionary one, but it is by no means without limitation. ‘The authority is so far of a discretionary character as to authorize the corporate officers to determine when the wants of the city demand a supply of water, and with this decision courts can not interfere. But the power can not be so exercised as to create a corporate debt beyond that limited by law, nor can it be so exercised as to surrender or suspend legislative power. While it is true that courts will not interfere with the exercise of discretionary powers, it is also true that they will interfere to prevent an abuse of discretion, or to prevent the corporate officers from transcending their authority. It is also true that courts will not interfere with mere matters of municipal legislation, but when the legislation is sought to

be made effective by a ministerial act, then courts will interfere in cases where the act transcends the authority of the corporate officers. Dillon Munic. Corp., sections 308, 927, 1048. The execution of a contract is a ministerial act, and if the contract is one in excess of the corporate authority, its execution may be enjoined.

The important and controlling question which confronts us here is as to the power of the municipal corporation to enter into the contract described in the pleadings. We have no doubt that the corporation had authority to contract for a supply of water for a period of twenty years, and that the contract can not be overthrown solely on the ground that it is a surrender of legislative power. There is a distinction between powers of a legislative character and powers of a business nature. The power to execute a contract for goods, for houses, for gas, for water and the like, is neither a judicial nor a legislative power, but is a purely business power. The question is, however, so firmly settled by authority that we deem it unnecessary to further discuss it. *City of Indianapolis* v. *Indianapolis, etc., Co.*, 66 Ind. 396; Dillon Munic. Corp. (3d ed.), sections 473, 474, authorities n.

In 1881 an amendment to the Constitution was adopted, in which this provision is incorporated: " No political or municipal corporation in this State shall ever become indebted, in any manner or for any purpose, to an amount, in the aggregate, exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void." This provision received consideration in *Sackett* v. *City of New Albany*, 88 Ind. 473, but the question there presented and decided was very different from that which here faces us. The point decided in that case was that a city could not issue bonds for current expenses where there were no funds in the treasury and the existing indebtedness exceeded two

per centum of the value of the taxable property of the municipality. There the question was not whether the claim which the municipal officers were about to pay in bonds was or was not a debt within the meaning of the Constitution; while here that is the question, so that we come to the decision of this case unfettered by any former adjudication of this court.

The question is a grave one, and not entirely without difficulty. If we hold that the contract to pay an annual water rent of $6,000 during a period of twenty years creates a debt for the aggregate sum of $120,000, and is a debt within the prohibition embodied in the Constitution, we should lay down a principle that would, in a great majority of instances, put an end to municipal government. If it be true that an agreement to pay a given sum each year for a long period of years constitutes a debt for the aggregate sum resulting from adding together all the yearly instalments, then it is extremely doubtful whether there is a city in the State that has authority to repair a street, dig a cistern or build a sidewalk, for nearly every city has contracts for gas and water supplies running for a long series of years, in which the aggregate amount of annual rents would of themselves equal, if not exceed, the limit of two per centum on the value of taxable property. We know, as matter of general knowledge, that water-works and gas-works require the outlay of enormous sums of money, and that such enterprises are not undertaken under contracts running for short periods of time. If the aggregate sum of all the yearly rents is to be taken as a debt within the meaning of the Constitution, then many cities will be left without the means of procuring things so essential to public welfare and safety. We are not to presume, unless coerced by the rigor of the words used, that the framers of the amendment, or the electors who voted for it, intended to destroy the corporate existence of our municipalities or to leave them without water or light. Nor are we to presume that the electors were ignorant of the existence, condition and necessities of our great towns and cities. On the contrary, we are to pre-

sume that these things were known to the electors, and that they intended to foster the best interests of these instrumentalities of local government.    An error frequently finds its way into trains of reasoning from the assumption, often made, that the officers are the corporation.  This assumption is radically erroneous, for it is the inhabitants, and not the officers, who constitute the public corporations of the land.    Grant Corp. 357;  *Lowber* v. *Mayor, etc.,* 5 Abbott Pr. 325.    *Clarke* v. *City of Rochester,* 24 Barb. 446.  To deny the right to procure water and light is to deny it to the inhabitants of the towns and cities, and these form no inconsiderable part of the population of the State.   We can not, therefore, by mere intendment declare that the electors of the State meant to lay down a rule that should practically take from the inhabitants of our cities the power to supply themselves with water or light.    To reach the conclusion that they meant to do this, we must find clear warrant in the language of the constitutional provision itself.  We agree that if it be found that the language used is clear and explicit, we must give it effect, no matter how disastrous the consequences may be.    While it is our duty to yield to the words of the Constitution, still, in determining what meaning they were intended to have, it is proper to consider the circumstances under which the provision was adopted and the object it was intended to accomplish.    Cooley Const. Lim. (5th ed.) 78, 79.

In view of the warring among the adjudged cases it is not easy to affirm that the word "debt" has a firmly settled meaning.    In one case it was said, "But the compensation to this contractor was not a debt within the sense of this provision, until the service was performed and the contractor was entitled to be paid.    It was, no doubt, an obligation, in some sense, from the time the contract was entered into, but it was not a debt in the popular sense" of the term.    *Weston* v. *City of Sgracuse,* 17 N. Y. 110.   A similar definition is annexed to the word in the opinion of the court, written by the eminent jurist, Judge Denio, in *Garrison* v. *Howe,* 17 N. Y.

458. It was said in *Wentworth* v. *Whittemore*, 1 Mass. 471, "but whenever it is uncertain whether anything will ever be demandable by virtue of the contract it can not be called a debt." By the Supreme Court of California it was said: "A sum payable upon a contingency, however, is not a debt, or does not become a debt until the contingency has happened." *People* v. *Arguello*, 37 Cal. 524. In *Sackett* v. *City of New Albany*, *supra*, this language was used: "By 'indebtedness,' in this connection, we mean an agreement of some kind by the city to pay money where no suitable provision has been made for the prompt discharge of the obligation imposed by the agreement." Conceding that there are cases giving the word "debt" a somewhat different meaning from that affixed to it by these authorities, still they are sufficient to prove, at least, that the word can not be said to have a firmly settled meaning. It is not necessary for us to decide that the meaning given the word in the cases cited is that which the word invariably possesses, for it is sufficient for our purpose to assume that its meaning is not so fixed and definite as to forbid construction. The word used in the constitution is " indebted," but without ascertaining what the word " debt " means we can not affix a meaning to that word, for its popular meaning is " placed in debt," or as Worcester puts it, " being in debt." It is obvious that a corporation owing no debt can not be indebted.

Our leading purpose is, therefore, to ascertain what meaning the authors of the constitution intended the word "indebted" to have, and we address ourselves to its accomplishment. It is clear that if the city should fail to perform its contract, the recovery would be for damages for a breach of contract, and not the contract rate of compensation, and, therefore, it can not be true that the whole of the compensation is certainly demandable by the corporation with which it contracts. It may be that but a small part of even one year's compensation can be recovered. On the other hand, the failure of the water company to perform may put an end to the contract, and that would, of course, terminate all liability

of the municipal corporation.   There could be no action maintained against the city for the recovery of compensation under the contract without evidence that the water had been furnished, and this proves that there is no indebtedness until the water has been supplied in accordance with the terms of the contract.

The effect of the proposed contract is that the city shall be liable for water as it is furnished and not before.   It is not until after the water has been furnished that there can be justly said to be a debt, for, while there might be a liability for damages, in case of a breach on the part of the city, there is certainly none under the contract until the city has received that for which it contracted.   If it can pay this indebtedness when it comes into existence, without exceeding the constitutional limitation, then there is no violation of the letter, and surely none of the spirit of the Constitution. We are careful to say when the debt comes into existence, and not to say when it becomes due, for between these things there is an essential difference.   The object to be accomplished by the amendment, the condition and necessities of our municipalities, as known to the authors of the amendment, and the just force of the language employed, authorize us to conclude that the inhibition of the Constitution does not apply to contracts for water to be paid for as the water is furnished, provided it is shown that the contract price can be paid from the current revenues as the water is furnished and without increasing the corporate indebtedness beyond the constitutional limit.

The adjudged cases sustain our conclusion.   The cases upon which our case of *Sackett* v. *City of New Albany, supra,* is based, were decided by the Supreme Court of Illinois, and having once accepted the decisions of that court as authoritative, it is both consistent and logical to follow them so far as we can without yielding our own deliberate convictions.   Happily, however, the decision of that court declares the rule to be that which we have here endeavored to prove the correct one.

The case to which we refer is that of *East St. Louis* v. *East St. Louis, etc., Co.*, 98 Ill. 415, where the subject was much discussed; three of the members of the court wrote opinions, but there was no dissenting vote. In delivering the opinion of the court, SHELDON, J., set forth the provision of the Illinois Constitution and stated the argument of counsel to be that a contract similar to the one here under discussion violated the Constitution, and said: " We do not assent to the correctness of this view. The contract was for the furnishing of an article for nightly consumption by the city during a period of thirty years, fixing the price at which the article should be furnished. There was no indebtedness in advance of anything being furnished, but indebtedness arose as gas should have been furnished along from night to night during the period of thirty years. The contract provides for the payment, monthly, at the end of each month, the amount that became due for the month then ended. When the company has furnished the gas for a certain month, then there is a liability—an indebtedness arises—and not before, as we conceive. Hence the amounts that might become due and payable under the contract in future years, did not constitute a debt against the city at the time of the entering into the contract, within the meaning of the Constitution." The decision in *Prince* v. *City of Quincy*, 105 Ill. 138, S. C., 44 Am. R. 785, does not overrule the case we have cited, but decides a different point from the one discussed in the extract quoted by us. The point really decided in *Prince* v. *City of Quincy*, *supra*, is stated with admirable precision and clearness in the head note prepared by the editor of the American Reports. The learned editor's statement is this: " Where the Constitution forbids any municipal corporation to become indebted beyond a certain amount ' in any manner or for any purpose,' that amount may not be exceeded even for necessary current expenses."

The clause in our Constitution is, in legal effect, and almost in words, the same as that of Iowa, and it is evident that it

was taken from the Constitution of that State.    It was said in the argument in *Prince* v. *City of Quincy*, 105 Ill. 215, that the clause in the Illinois Constitution was taken from that of Iowa, and if this be true, then the Illinois courts should have looked to the construction given by the courts of Iowa, for it is a familiar rule that where a clause is taken from the Constitution or statute of another State, it will be deemed to have the meaning given it by the courts of that State. *Langdon* v. *Applegate*, 5 Ind. 327, is authority upon this point, although it has long since ceased to be authority upon some of the points decided ; and the cases of *Fall* v. *Hazelrigg*, 45 Ind. 576 (15 Am. R. 278), and *Clark* v. *Jeffersonville, etc., R. R. Co.*, 44 Ind. 248, are in harmony with that decision upon the point to which we have cited it.    Cooley Const. Lim. (5th ed.) 64. Turning to the decisions of the Iowa courts we find abundant support. In *Dively* v. *City of Cedar Falls*, 27 Iowa, 227, it was held that an obligation arising under a contract to pay for work when it was performed, does not constitute an indebtedness within the meaning of the Constitution, and this decision has the approval of Judge Dillon.    1 Dillon Munic. Corp. (3d ed.), section 135.    The question was very fully discussed in *Grant* v. *City of Davenport*, 36 Iowa, 396, where it was held that a contract entered into by the city for the supply of water for a term of years, at an annual rental, is one relating to the ordinary expenses of the city, and that the annual rental is not an indebtedness within the meaning of the Constitution. One of the illustrations used in the course of the opinion is so apt that we quote it : "Suppose a man having a family to support is without other means to do it, except his salary, which is adequate for that purpose.    He is compelled to rent a house to live in, and by a contract for a term of years he can reduce its cost, and he therefore makes a lease for ten years at $300 per year, or $3,000 for the term, the rent being payable monthly, quarterly or annually.    Has that man created an indebtedness of $3,000 ? "    The cases of *French* v. *City of Burlington*, 42 Iowa, 614, and *Burlington Water Co.* v.

*Woodward,* 49 Iowa, 58, sustain the rulings made in the former cases. The case of *Scott Co.* v. *City of Davenport,* 34 Iowa, 208, decides that where bonds are issued binding the corporation to pay, an indebtedness is created, and the case is distinguished from *Dively* v. *City of Cedar Rapids, supra.* The cases of *State* v. *McCauley,* 15 Cal. 429, and *People* v. *Pacheco,* 27 Cal. 175, go very far to sustain the doctrines laid down by the courts of Iowa.

The Supreme Court of Pennsylvania, in *Appeal of the City of Erie,* 91 Pa. St. 398, held that an agreement binding the corporation to pay an annual rent for property created an indebtedness within the meaning of the Constitution, but in the course of the opinion said: "Many authorities have been cited for the defence, none of which seem to us to bear upon the point in issue. There is one, however, which we notice because of its general pertinency. In Dillon on Municipal Corporations, section 88, the learned author cites an Iowa case, involving the validity of a contract by a city for a supply of water, in which it is said: 'When a contract made by a municipal corporation pertains to its ordinary expenses, and is, together with other like expenses, within the limit of its current revenues and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute the "incurring of indebtedness" within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts.' This, we hesitate not to say, is a sound constitutional interpretation, and in a similar case might well be adopted in the construction of our own Constitution. If the contracts and engagements of municipal corporations do not overreach their current revenues, no objections can lawfully be made to them, however great the indebtedness of such municipalities may be; for in such case their engagements do not extend beyond their present means of payment, and so no debt is created. Had the defendant in the bill before us, instead of demurring, made answer that its annual revenues were sufficient, over and above the pay-

ment of the interest of its indebtedness and the ordinary ex-
penses of the city government, to meet the rent proposed to
be paid, a very different case would have been presented for
consideration. But the demurrer, admitting, as it does, the
allegations of the bill, raises the single question of the power
of the city to contract a new debt, notwithstanding its present
indebtedness exceeds the constitutional limit, and this without
reference to its resources or present ability to meet and pay
the contract intended to be entered into." The case of *Coulson*
v. *City of Portland,* Deady, 481, does not involve the question
we are here discussing, for the court stated the question there
decided to be, " Can the city lawfully issue interest coupons to
railway bonds, payable half yearly through a period of twenty
years, and amounting in the aggregate to over $300,000 ? "

We have reviewed all the cases cited by counsel, and such
others as we have been able to find upon a diligent search, and
are satisfied that the conclusion we have reached is in har-
mony with the decisions made in cases where the question has
been considered and decided, and is not opposed in principle
to any of the cases bearing upon the general question.

We have assumed that the supply of water is necessary to
the welfare of the inhabitants of the municipality, and that
it constitutes one of the items of current expenditure essen-
tial to the welfare of the corporation, and this assumption
rests upon the facts pleaded in the answer. This distin-
guishes the case, as is well shown in *Grant* v. *City of Davenport,*
*supra,* from the cases in which property is purchased or sub-
scriptions made to the capital stock of railroad or other cor-
porations. It is the items of expense essential to the main-
tenance of corporate existence, such as light, water, labor
and the like, that constitute current expenses payable out of
current revenues. The authorities agree that current reve-
nues may be applied to such purposes even though the effect
be to postpone judgment creditors. *Coy* v. *City Council,*
17 Iowa, 1; *Coffin* v. *City Council,* 26 Iowa, 515; *Grant*
v. *City of Davenport, supra.* When the current revenues are

sufficient to fully pay the current expenses necessarily incurred to maintain corporate life, there can not be said to be any debt. We do not assert that a debt may be created even for current expenses, if its effect will be to extend the corporate indebtedness beyond the constitutional limit, but we do assert that where the current revenues are sufficient to defray all current expenses without increasing the indebtedness, there is then no corporate debt incurred for such expenses. To illustrate our meaning, suppose a laborer is employed on the first day of April to render services on the first day of May, that on the day of the employment there is no money in the treasury, but on the first day of May, when the services are rendered, there will be more than enough yielded by the current revenues, there is in such a case really no debt. Again, suppose that on the first day of April gas is needed for that month, and that on each day of that month the current revenues are sufficient to pay each day's gas bill, there will be no debt even though there was not sufficient money to pay the month's account in the treasury on the day the contract was made. Such contracts do not create a debt prior to the rendition of the services in the one case, or to the furnishing of gas in the other; they simply devote to current expenses current revenues. While, as decided in *Sackett* v. *City of New Albany, supra,* the debt can not be made to exceed the constitutional limit even for current expenses, no matter how urgent, yet current revenues as they come in may be used to defray such expenses, and if they are sufficient for that purpose, then no debt is created.

If a bond, note, or other obligation is executed, then, doubtless, a debt is created, for such things constitute evidences of indebtedness, but that is not the case here. So, if the consideration of the contract is received at once, instead of being yielded in the future or at intervals, then it might be said that there was a debt, but where there is nothing owing until after the thing contracted for is done or furnished, and that thing is a part of the necessary yearly expenses of

the municipality, there will be no debt, if, when the thing is done or furnished there will be money in the treasury, yielded by current revenues, sufficient to fully pay the claim without encroaching upon other funds. This we understand to be the case made by the answer, and we think it a case not within the inhibition contained in the constitutional amendment.

If a different view be taken from that which we maintain, startling results would follow in the application of the principle to other cases. Take, for instance, a merchant having a large number of clerks employed for a year each, and at a fixed salary, could such a merchant in making out his tax-list deduct the aggregate amount of all the salaries computed to the end of the year, on the ground that it constituted an indebtedness? Take, again, the same supposed case, and would any one say that the merchant's solvency was to be determined by taking into consideration the aggregate of the salaries that would be due his clerks at the end of the year? Take, for another example, the case of a private corporation actively engaged in business, could it be pushed to the wall on the ground that it was insolvent, by evidence that it had contracted with a large number of men for a year's service, and that the aggregate sum due at the end of the year would be much greater than the value of its property at the opening of the year? Take still another example, a municipal corporation—and here there need be no supposition—with its officers (some of them with terms of several years), its policemen and its firemen, is it indebted, at the beginning of the year, for the grand aggregate of all the salaries to the end of all the terms? In the case of the merchant and of the private corporation, it certainly would be held, without hesitation or doubt, that if the current income or profit would discharge the obligations there would be no indebtedness; and this must be true of municipal corporations in cases where there will be money in the treasury, derived from current revenues, sufficient to pay for services rendered or things furnished, as part of the current corporate expenses, when the services are ren-

dered or the things actually furnished. Expenses of such a character should be deemed incidental expenses of the corporate business, and not debts, and as long, at least, as the current revenues will pay these expenses without taking from funds devoted to other purposes by command of the corporate charter what properly belongs to them, there is no indebtedness within the meaning of the Constitution.

Judgment reversed, with instructions to overrule the demurrer to the answer, and to proceed in accordance with this opinion.

Filed Sept. 16, 1884.