## McCREIGHT v. CITY OF CAMDEN.

1. MUNICIPAL BONDS—CONSTITUTION OF 1895.—Under the Constitution of 1895, a city may issue bonds to refund outstanding matured bonds, without submitting the question to the voters of the city, when so authorized by its charter.
2. IBID.—A city council may, upon authority granted it by the legislature before the adoption of the Constitution of 1895, issue bonds after said adoption, to fund a pre-existing lawful debt, without submitting such question to the electors of the city.
3. MUNICIPAL ELECTION—REGISTRATION.—Where a municipal election was held during the year 1896, prior to the general election of that year, the electors were not required to be registered, as required in art. 2, sec. 12, of Constitution of 1895.
4. MUNICIPAL DEBT—CONSTITUTION OF 1895.—The provisions of art. 10, sec. 5, of the Constitution of 1895, limiting the amount of municipal debts, do not apply to issues of bonds to refund a previously existing debt.
5. IBID.—CITY OF CAMDEN—CONSTITUTION OF 1895.—The act of 1894 (21 Stat., 1027), authorizing the city council of Camden to submit to the electors of the city the question of bonding the paving debt, does not require registration as a requisite to voting therein, nor does the Constitution of 1895.
6. IBID.—THE CONSTITUTION OF 1895 does not interfere with an act of the legislature, passed previously, authorizing a city to create a debt,

where the debt was actually created under such authority before adoption of Constitution.

7. CITIES AND TOWNS—THE ACTS OF 1896, authorizing cities and towns to create debts, apply only to new debts.

8. MUNICIPAL BONDS—CITY OF CAMDEN—CONSTITUTION OF 1895.— The bonded debt proposed to be issued by the city of Camden does not exceed the constitutional limit, and this limit does not apply here. Following *Todd* v. *City of Laurens,* 48 S. C., 395.

Petition, in the original jurisdiction of this Court, by William R. McCreight against F. L. Zemp, as mayor, and W. F. Malone, W. G. Wilson, and D. E. Hinson, as aldermen, composing the city council of the city of Camden, for an injunction, restraining them from issuing certain city bonds.

*Mr. J. T. Hay*, for petitioner.

*Mr. W. D. Trantham*, contra.

March 31, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE.   This is an application for the writ of injunction addressed to this Court in its original jurisdiction.  .The petitioner is a citizen and taxpayer of the city of Camden, in this State, and the respondents, as the mayor and aldermen of said city, compose its city council.   The city council, being about to issue $10,000 bonds for public purposes, and there being some doubt entertained as to their power to do so, this proceeding was begun, to restrain such issue of bonds.   The pleadings are somewhat extended, and, therefore, we will not reproduce them, but will give their substance.   It seems that while the respondent corporation bore the name of the town of Camden, under the authority of an act of our General Assembly, passed in the year 1884, a debt was contracted, for which bonds were issued to the amount of $15,000, one-half of which ($7,500), matured on 15th day of March, 1890, and the other half ($7,500), matured on the 15th day of March, 1895.   The first block of $7,500 of said bonds have already been re-

funded, but the other half ($7,500) have already matured, to wit: 15th March, 1895, and the respondents now propose to issue as a part of the $10,000 of bonds, $7,500 to refund the bonds issued in 1884, and the remaining $2,500 of said proposed $10,000 issue of bonds is to pay what is known as the "pavement debt" of the city of Camden. The General Assembly of this State, by an act entitled "An act to authorize and empower the city council of Camden, South Carolina, to issue and dispose of bonds of the said city, for the purpose of refunding so much of what are known as the town hall or opera house bonds thereof as will mature on March 15, 1895, and for the purpose of raising funds with which to pay what is known as the pavement debt of said city, and to provide for the payment thereof," approved 21st December, 1894 (21 vol. Stat. at Large, 1027), empowered said city council of Camden to issue and dispose of negotiable bonds of the said city of Camden to the extent of $10,000, in sums of from $100 to $1,000 each, bearing interest at the rate of five per cent. per annum, payable semi-annually, on the 15th day of March and the 15th day of September of each year, and to become payable in twenty years from the issuance thereof. Said bonds to the extent of $7,500, if so much be necessary, shall be used in refunding so much of what are known as the town hall or opera house bonds of said city as mature on the 15th day of March, 1895; and to the extent of $2,500, if so much be necessary, to provide for the purpose of raising funds with which to pay so much as may remain unpaid of what is known as the pavement debt thereof. That said city council be, and they are hereby, authorized and empowered to levy an annual tax on all the taxable property of the said city, not exceeding five mills upon the assessed value thereof, if the same be necessary, to provide for the payment of the principal and interest of said bonds as the same shall become due.

The city council of Camden, in order to carry out said act, passed an ordinance on the 27th day of March, 1895, making

provision for the issue of said bonds by said city council, for the purposes and in accordance with the directions of said act. It is well to note that it is set out in the petition here being considered, that what is known as the pavement debt of said city of Camden is not a bonded debt of said city. Before the bonds mentioned in said act of the General Assembly, and provided for by the ordinance of said town of Camden, could be issued, a proceeding was instituted to test the power of said city of Camden to issue said $10,000 of the bonds of said city, by W. J. Jones, as petitioner, against the city of Camden, S. C., which proceeding was in the original jurisdiction of this Court (see 44 S. C., 319), and by the judgment of this Court, rendered by its order on the 24th April, 1895, the $10,000 of bonds were declared valid bonds, and the petition was dismissed, and in the opinion handed down on 7th September, 1895, it was held that there was no valid ground for objection to the bonds in question. After this decision of the Supreme Court of this State, and before the bonds could be issued, a new Constitution of the State was adopted, to wit: on the 4th day of December, 1895. Amongst other provisions in said Constitution occurs the 7th section of article VIII., in these words: "No city or town in this State shall hereafter incur any bonded debt which, including existing bonded indebtedness, shall exceed eight per centum of the assessed value of the taxable property therein; and no such debt shall be created without submitting the question as to the creation thereof to the qualified electors of such city or town as provided in this Constitution for such special elections; and unless a majority of such electors voting on the question shall be in favor of creating such further bonded debt, none shall be created: *Provided*, That this section shall not be construed to prevent the issuing of certificates of indebtedness in anticipation of the collection of taxes for amounts actually contained, or to be contained, in the taxes for the year when such certificates are issued and payable out of such taxes: *And provided, further*, That such cities and towns shall,

6—49

on the issuing of such bonds, create a sinking fund for the redemption thereof at maturity. Nothing herein contained shall prevent the issuing of bonds to an amount sufficient to refund bonded indebtedness existing at the time of the adoption of this Constitution."

And that on the 27th January, 1896, another ordinance was passed by the city council of Camden, providing for an election in said city to determine whether the issue of $2,500 bonds to pay the indebtedness of said city known as the pavement debt thereof, should be made, and that this ordinance was passed on the petition of a majority of the freeholders of said city, asking that an election should be held of all the electors residing in said city, whereby a choice of the majority of said electors might be ascertained touching the issue of such $2,500 in the bonds of said city for that purpose—the payment of the said pavement debt. That in pursuance of said ordinance passed on the said 27th day of January, 1896, an election, on four days' notice, was holden in said city, whereby a majority of the electors of said city who voted at said election, voted in favor of such said issue of bonds, but that the number who voted at said election was not a majority of the whole number of electors residing in said city; that no registration of voters was held prior to said election; that the requirements of elections, as laid down in the charter and amended charter of said city, was not complied with at said election, in that the mayor alone, and not the mayor and aldermen of said city, appointed the managers to conduct said election. That on the 2d March, 1896, the city council of Camden passed another ordinance for the purpose of authorizing an issue of $2,500 bonds of said city, to pay the said pavement debt of $2,500 of said city, with the proceeds of said bonds when sold, in accordance with the majority vote at the election held on the 31st January, 1896.

That on the 9th day of March, 1896 (see 22d vol. Stat. at Large, 86), the General Assembly of this State passed an act, entitled "An act to authorize and empower cities,

towns, townships, and other municipal corporations to issue negotiable coupon bonds for the refunding or payment, in whole or in part, of bonded indebtedness, and any unpaid past due interest thereon existing at the time of the adoption of the present Constitution." That on the 9th day of March, 1896, the General Assembly of this State passed another act, whose title was "An act to authorize special elections in any incorporated city or town of this State for the purpose of issuing bonds for corporate purposes." (See 22d vol. Stat. at Large, 88.) That an ordinance was passed by the said city council of Camden, on the 1st December, 1896, whereby the issue of $7,500 bonds of said city, for the refunding of what is known as the opera house bonds, which matured on the 15th March, 1895, was provided for; that said bonds should be each in the amount of $500, with interest at five per cent. per annum, payable semi-annually, and numbered from 16 to 30, inclusive; that a sinking fund should be created by the payment of said bonds when due, by a tax of three-eighths of one mill on the dollar of the taxable property within the city of Camden. (The statements up to this point are included in the first, second, and third paragraphs of the petition.)

The fourth paragraph, in effect, alleges: That the petitioner is informed that said city council is about to issue $2,500 in bonds to pay what is known as the pavement debt of said city; and fifth paragraph alleges, also, $7,500 of its bonds to refund so much of the indebtedness of said city as is known as the opera house bonds of said city, which matured on the 15th day of March, 1895. Sixth paragraph, in effect, alleges: That under the 23d section of the act of the General Assembly of this State, amending the charter of said city, approved 24th December, 1891 (see 20 vol. Stat. at Large, 1393), the said city council of Camden was without the power to issue the bonds authorized to be issued by said city council, under the act approved December 21, 1894, because the question of such issue of bonds was never submitted to an election of the corporators. That said act

of 1894 was unaffected by the Constitution of 1895, and
the legislation heretofore referred to as having been made
on the 9th of March, 1896. Seventh paragraph, in effect,
alleges: That even if the provisions of the Constitution of
1895, and the subsequent legislation in 1896 in pursuance
thereof, operated as a repeal of the act of 21st December,
1894, still the bonds proposed to be issued are illegal, be-
cause not made payable in any legal tender money of the
United States, as required by said act of 1896, because no
sufficient provision has been made for the creation of a sink-
ing fund, as required by the 7th section of article VIII. of
the Constitution of 1895. That as to the issue of bonds to
pay the pavement debt, there has been no election, as re-
quired by said section 7 of art. VIII. of the Constitution,
and no sinking fund is sufficiently provided for under said
section. Eighth paragraph, in effect, alleges: That the
question as to the issue of bonds to pay the pavement debt,
when it was submitted to the electors of said city of Cam-
dem, was too vague in the terms of such subscription.
Ninth paragraph alleges, in effect: That in order to ascer-
tain whether the increase of the bonded indebtedness of the
corporation of the city of Camden is within the limitations
provided under the Constitution of 1895, the city council
have made their calculations, based upon the assessment of
the property within the city of Camden which is liable to
taxation, made by said city council, and not on that made
by the State for taxation of such said property. Eleventh
paragraph, in effect, alleges: That the territory embraced
within the city of Camden is covered and extended over
by the following political divisions, subdivisions, and mu-
nicipal corporations, to wit: the State of South Carolina,
the county of Kershaw, the city of Camden, and the school
district of Camden. That the debt of the State is about
$6,500,000; that the debt of Kershaw County is $100,000;
the debt of the city of Camden, including the proposed
issue of $10,000, is $17,500; the debt of the school district
of Camden is $10,000, which, it is alleged, is more than the

fifteen per cent. of the assessed value of the property within the limits of the city of Camden, for taxation. (See section 4 of art. X. of the Constitution of 1895.)

The return of the respondents admits the truth of the statements of facts embodied in the first, second, and third paragraphs of the petition, except that they insist that the petition presented by the owners of real estate in the city of Camden, although without date, was presented to the city council of that city, at a meeting thereof held on the 14th day of January, 1896, and except as to the election held on the 31st January, 1896, which, although on four days notice, was not in opposition to any requirement of the charter, or amended charter, of said city, for the only time fixed for any notice of an election in said city is as to filling the offices of mayor and aldermen, which is ten days; that although the mayor appointed the managers, it was done under the authority of the city council; that the managers took the oath of office in each instance, the polls were open as required by law, and every voter, who voted, voted in favor of issuing the $2,500 in bonds to pay what is known as the pavement debt of said city of Camden. They admit that the requirements of section 13 of article II. of the present Constitution of the State were not complied with, but they deny that such section applied to such election. They admit the fourth and fifth paragraphs of the petition, and allege that the forms of the bonds have been prepared in strict compliance with the law. That in answer to the sixth and seventh paragraphs of the petition, they say that no bonds had been issued under the act approved 21st December, 1894, and the ordinance ratified 27th March, 1895, when the Constitution of the State was adopted in 1895. That the result of section 7 of article VIII. of the Constitution of 1895 was to render imperative and invalid so much of said act of the legislature and ordinance of the city of Camden, so far as the issue of bonds to refund those bonds known as the opera house bonds, which matured on 15th March, 1895, was concerned. That this result may be

stated as follows: *a.* As to the bonds proposed to be issued to refund the bonds, $7,500, maturing on 15th March, 1895, subsequent to the adoption of the Constitution, the act of the General Assembly was passed, to wit: 9th March, 1896. That the bonds which matured on 15th March, 1895, constituted a bonded indebtedness existing at the time the Constitution was adopted, and, therefore, under the terms of section 7 of art. VIII. thereof, and of the act of March 9, 1896, the bonds proposed to be issued under the ordinance of the city council, ratified on the 1st of December, 1896, can be legally issued without the submission of this question to an election. That while it is true that the said bonds, now proposed to be issued, do not, in terms, make them payable in any legal tender money of the United States, such is the legal effect of the proposed bonds; and that the ordinance of December 1, 1896, does provide for the creation of a sinking fund for the redemption of said bonds at maturity. *b.* As to the bonds proposed to be issued to raise funds with which to pay the debt known as the pavement debt. The act of the General Assembly approved 21st December, 1894, and the charter of said city, and the ordinance passed 27th March, 1895, were not affected by the Constitution of 1895, and the act of the General Assembly in pursuance thereof, so far as the bonds to be issued to raise funds with which to pay the debt known as the pavement debt is concerned, and that these bonds can be legally issued. But, admitting that the Constitution of 1895 rendered the act of 21st December, 1894, inoperative, and also rendered inoperative the provisions of the charter of the city of Camden, which authorized the creation of debt for public purposes up to $25,000, yet the election and the ordinances of said city having been had previous to the adoption of the act of 9th March, 1896 (22 Stat. at Large, 88), were exactly in pursuance of the provisions of section 7 of article VIII. of the Constitution, for the question of creating such bonded indebtedness was submitted to the qualified electors of said city, just as is therein provided, as pointed

out in sections 12 and 13 of article II. of the Constitution, and a majority of the electors voting on the question were in favor of creating such bonded indebtedness. And, further, that provision has been made in the ordinance of the city of Camden for the creation of a sinking fund from which to pay and discharge these bonds at their maturity. See ordinance adopted on 1st December, 1896.

The respondents deny the allegations of the sixth paragraph of the petition. The respondents, in answer to the ninth paragraph of the petition, allege that, while it is true that there does exist an assessment of the taxable property within the limits of the city of Camden, apart from that made for State and county purposes, yet that it makes no difference in the result in ascertaining whether, as a fact, the city of Camden has a bonded indebtedness beyond eight per cent. on her taxable property. The city's assessment for the year 1896 was $582,555, while the State and county assessment for the same year was $577,085, and the present bonded debt of the city being only $15,000, was not nearly up to the limit of eight per cent., which would be some $46,000. That the bonds which matured on 15th March, 1895, bear seven per cent. per annum, and the proposed issue of bonds only bear five per cent. per annum interest. That the bonds are not to be disposed of below their value. The respondents admit that petitioner and other citizens of Camden will be injuriously affected if the proposed issue of these $10,000 in bonds is illegal; but they deny that the proposed issue is illegal. The respondents admit that the public debt of the State of South Carolina is over $6,500,-000; that Kershaw County owes $100,000; city of Camden, $15,000; school district of Camden, $10,000; but insists that, so far as the $7,500 in bonds to refund that amount which matured on the 15th March, 1895, are concerned, section 4 of article X. of Constitution of 1895 cannot apply, because expressly excepted therein from such application.

The respondents earnestly insist that they have the right to issue the $2,500 bonds to pay the "pavement debt" of said

city, even though it should be held that the election held in
1896 was not in compliance with the law, because the *bona
fide* of this debt is not questioned.    It is not a new debt, but
one existing prior to 1894; the city of Camden was, under
its charter, empowered to create the debt (see act 1890, sec.
14, p. 894); the council was authorized, under the act of
1894, to issue bonds to pay this debt, and its ordinance ac-
cepted such legislative grant of power; the Supreme Court
of this State, in the case of *Jones* v. *City Council of Cam-
den*, 44 S. C., 319, has held, "that there is no valid ground
of objection to the issue of these bonds;" and such is the
status of this part of the proposed issue of these bonds, and
it is unaffected by the Constitution of 1895, any statutes of
the State or ordinances of the city.    Wherefore, the in-
junction should be denied.

When this return was read in open Court, the petitioner
demurred thereto, contending that by admitting all the
alleged statements of fact to be true, there was no good
cause of defense therein made to appear.

It now becomes our duty to consider the questions pre-
sented.    We will divide these bonds which it is proposed
that the city council of Camden will issue into two classes,
viz: (1) the $7,500 in bonds with which to redeem the
$7,500 of the bonded debt of the city of Camden known as
the opera house debt, which matured on the 15th day of
March, 1895; (2) the $2,500 debt which has already been
contracted by the city of Camden, and known as the pave-
ment debt, but for which no bonds have ever yet been issued.

1. These $7,500 of bonds, which matured on the 15th
March, 1895, were issued by the city council of Camden on
15th March, 1885, under a grant of power therefor from
the General Assembly of this State.    These bonds
are outstanding in the hands of innocent holders for
full value received; and by their terms they are ma-
tured obligations of said city.    When, therefore, the Gen-
eral Assembly of this State, on the 21st December, 1894,
gave to the city council of Camden the power to renew

these bonds, it was not giving that city a power to contract a debt, for the city council had contracted this debt ten years before. All that was intended was to renew a debt already in existence at a lower rate of interest. There was no necessity, under the 23d section of the act of the General Assembly, found on page 1395, 20 Statutes at Large, modifying the charter of this city, which required the question of creating this debt to be submitted to the qualified voters of this city, for this debt had already been contracted. A bond is, like a note, but an evidence of a debt. The framers of our present Constitution recognized the full force of this distinction between debts already created and those to be created; while they provided stringent regulations as to a future bonded indebtedness in cities and towns, they were very careful to secure an absence of such requirements in their application to such indebtedness which had already been created. See, in confirmation of this statement, the concluding words of section 7 of article VIII.: "Nothing herein contained shall prevent the issuing of bonds to an amount sufficient to refund bonded indebtedness existing at the time of the adoption of this Constitution." Again, at the close of section 5 of article X.: "Provided, that nothing herein shall prevent the issue of bonds for the purpose of paying or refunding any valid municipal debt heretofore contracted in excess of eight per centum of the assessed value of all the taxable property therein." Besides all this, this Court has already held, in the suit of *Jones* v. *City Council of Camden*, 44 S. C., 319, that this proposed issue of bonds, so far as the $7,500 opera house bonds is concerned, will be a valid issue of said city of Camden. And we now hold that such issue of $7,500 in bonds will be entirely free of any constitutional infirmity.

2. We will next consider the matter of the validity of the issue of bonds, so far as the $2,500 is concerned, to pay what is known as the pavement debt of the city of Camden. It is well to look into the power of this city of Camden to contract debts, and to give, as evidence thereof, bonds

bearing interest. Section 23 of an act of the General Assembly of this State, amending the charter of the city of Camden, which section is found at page 1395 of Statutes at Large, vol. XX., provides: "That the said city shall have power to borrow, for the public uses of the corporation, by issuing from time to time, as occasion may require, the bonds of the said corporation, bearing interest at a rate not exceeding seven per centum per annum, to be paid semi-annually, for an amount not to exceed $25,000, and for the payment of the interest and ultimate redemption of principal, according to the terms of the bonds, the said corporation shall be at all times liable: *Provided*, That the property of the inhabitants of said city shall be bound for the redemption of said bonds in no other way than by the imposition of the usual tax, according to the provisions of this act: *And provided, further*, That a majority of the owners of real estate, within the corporate limits of said city, shall petition the city council to order an election for the purpose of ascertaining if a majority of the qualified voters of said city desire the said bonds issued, and in said petition it shall be stated what it is desired to issue said bonds for and the amount for which said bonds are to be issued: *And provided, further*, That in pursuance of said petition the said city council do order an election, to be governed as all other elections provided for in this charter are governed; and if at said election a majority of the qualified voters of said city do vote in favor of issuing said bonds." This amendment to the charter was approved 24th December, 1891. Thus it is manifest that the creation of a debt, to be secured by the issue of bonds up to the limit of $25,000, was provided for as early as 1891. But before the year 1894 the city council of Camden had created a debt for $2,500 in paving one of its principal streets, and we may suppose that the collection of this amount of money from the taxpayers, in addition to the other account of expenses of the said city by the ordinary annual taxation, would prove too burdensome to them, so a resort was had

to the General Assembly to clothe the city council with the power to sell $2,500 of city bonds to pay this debt. Accordingly, the act of December 21st, 1894, was enacted, giving this city, through its city council, power to do this. The city council accepted this act by an ordinance therefor. Just here the petitioner presents a difficulty, for he says that, although this legislative grant of power was thus conferred upon the city council, yet that, according to section 23 of the amended charter, which we have already quoted in its entirety, it was the duty of said city council to submit the question of the issue of those bonds to the qualified voters of said city, which was not done when the city council by its ordinance accepted this legislative power to issue the bonds, and in support of this position reliance is had on the case, *State ex rel. Vandiver* v. *Tolly*, 37 S. C., 551. In the case just cited, the city of Anderson, by its charter, was limited to a bonded indebtedness not to exceed the sum of $50,000, but many of the citizens were anxious to secure the location in their city of the Winthrop college for young women, and were willing to subscribe $75,000 in bonds of their city for that purpose; the limit of $50,000 was in their way, for they already owed $36,000, which was secured by the city's bonds. So the General Assembly was appealed to to authorize and empower this increase in its bonded debt beyond the limits fixed in the city charter. This was done by the General Assembly, and this Court held that such authorization by the General Assembly did not dispense with a submission of the question of this increase in the bonded debt to the qualified voters of said city of Anderson, as prescribed in the charter. It will be observed, however, that the cases are dissimilar, for in the case at bar there will not be an increase of Camden's debt beyond the limit in its charter, while the city of Anderson had no power to increase its debt without legislative power therefor. Besides, the legislative grant of power, in the case at bar, was to enable the city of Camden to place in bonds a debt which that city had already contracted, while with Anderson the

debt proposed was a new debt, and it will be seen that this latter distinction is indicated in the language used by Mr. Chief Justice McIver in delivering the opinion of the Court, at page 558 of *State* v. *Tolly*, *supra*. This debt, in the case at bar, having already been legally contracted by the city of Camden, and it only needing the grant of power from the legislature to change the form of that legally contracted debt, by placing it in bonds instead of an account, we see no reason why this matter should be held to have fallen under section 23 of the act amending the charter of the city of Camden. Then, too, the validity of this pavement debt has been recognized by this Court, in the case of *Jones* v. *City Council of Camden*, 44 S. C., 319. But our difficulties as to this issue of $2,500 are not nearly over, for the city council of Camden, after having obtained a judicial sanction of this Court to the issue of these bonds in April, 1895, allowed the convention which was to frame a new Constitution for the State to meet before any of such bonds were offered to be issued. The Constitution of 1895 contains some far-reaching and well-considered legislation on the subject of the power of municipal corporations to increase the bonded indebtedness of such corporations. For example, section 12 of article II. prescribes the qualifications of electors at municipal elections, but in doing so it is careful to say this shall not take effect or apply as to any municipal election held prior to the general election in the year 1896. So, too, in section 13 of the same article, careful and searching provisions are made as to the elections which shall be held in any incorporated city or town in this State for bonding the same. It provides that the General Assembly shall require, as a condition precedent to the holding of any such election, a petition from the majority of the freeholders of said city or town as shown by its tax books, and at such election all electors of such city or town, who are fully qualified to vote under section 12 of this article, &c., shall be allowed to vote, and further, that the vote of a majority of those voting in said election

shall be necessary to authorize the issue of bonds. We note, at this point, that the Constitution in this article II., by express words, excepts, both in sections 12 and 13, from the application of these restrictive features here set up, those cases which shall occur before the general election of 1896 shall be holden. So, too, in article VIII., section 7, which we have already quoted, or which has already been quoted in this opinion. In this section, any issue of municipal bonded indebtedness is limited to eight per cent., but this was the provision of our former Constitution, as the result of an amendment to the Constitution of 1868, but it goes further, and requires the question of the creation of any such bonded debt to be submitted to the qualified electors residing in said city or town, and also requires that a sinking fund shall be created.

Then, again, in article X., section 5 provided that the General Assembly shall require that no county, township, municipal corporation or political division shall be allowed to increase its bonded indebtedness if at the time of such proposed increase thereof the aggregate amount of its already existing bonded debt amounts to eight per centum of the value of all taxable property therein, as ascertained by the valuation for State taxation. "And wherever there shall be several political divisions or municipal corporations covering or extending over the same territory or portions thereof, possessing a power to levy a tax or contract a debt, then each of such political divisions or municipal corporations shall so exercise its power to increase its debt under the foregoing eight per cent. limitation that the aggregate debt over and upon any territory of this State shall never exceed fifteen per centum of the value of all taxable property in such territory as valued for taxation by the State," with the proviso we have already quoted as not applying this provision to the issue of bonds issued in paying or refunding any valid municipal debt heretofore contracted in excess of eight per centum of the assessed value, &c.

One of the points made by the petitioner is that no election has been held, as required by this Constitution, at which the qualified electors expressed their assent to this proposed increase of the bonded debt of the city of Camdem, because no registration of electors had been made. This position is untenable, for these reasons: *First*, the Constitution expressly provides that the registration there required shall not apply until after the general election in 1896, which occurred on the first Tuesday in November, 1896; and, *secondly*, because the act of 21st December, 1894, authorizing the city council to issue these bonds, did not require any registration of the qualified voters, and consequently none was necessary; and, *third*, that in section 11 of article XVII. of the Constitution of 1895, it is provided * * * "First. That all laws in force in this State at the time of the adoption of this Constitution, not inconsistent therewith, and constitutional when enacted, shall remain in full force until altered or repealed by the General Assembly, or expire by their own limitations" * * * Under this section, it is very clear that there was no provision in the Constitution in 1868 that forbade a corporation—such as city or town—from contracting a debt if power to do so was given by the General Assembly, except that such debt must not be in excess of eight per centum of the taxable property therein assessed for taxation. This debt of $2,500 was not in excess of said eight per centum limit. Therefore, it was a constitutionally vested power in the city council of Camden to create such a bonded indebtedness, if it saw proper to accept the grant of power to do so from the General Assembly, and this it did accept. There has been no interference with this power by the General Assembly. And, besides, it was not inconsistent with the present Constitution for the city of Camden to have contracted this debt prior to 1894, and for the General Assembly of the State to have empowered the city council to change the form of this debt from an account to that of a bonded debt. The acts of 1896

do not affect this question, for those acts are intended to effectuate the limits and restrictions of the present Constitution in relation to the creation of new debts and the issue of bonds therefor. Nor does there exist any difficulty growing out of the clause just quoted from the article X., section 5, of the present Constitution, for two reasons: one is that we have made the calculations, and this proposed increase of the indebtedness of the city of Camden does not exceed eight per cent. of its taxable property, as assessed by the State for taxation, nor does it equal the fifteen per cent. as set out in the clause of section 5 of article X., we have just awhile ago quoted, when you aggregate the proportion of the State debt, of the county of Kershaw debt, the city debt, the school district of Camden, upon the principles enunciated on that subject in the recent case of *John W. Todd* v. *The City Council of Laurens*, 48 S. C., 395. And, *second*, because, under the section of article XVII., section 11, of the present Constitution, such rule does not apply to this case for the reasons we have hereinbefore given on this subject.

Under our views, from every standpoint presented for our consideration in this case, the issue of bonds for $2,500, with the proceeds of which the debt known as the pavement debt will be paid, is entirely constitutional and valid in every way.

It is the judgment of this Court, that the injunction prayed for be refused, and that the petition be dismissed.