This is a proceeding brought in the district court of Oklahoma county by the state, through the Governor, Secretary of State, and the State Treasurer, for the purpose of refunding certain outstanding state warrants, alleged to be legal and valid, aggregating an amount somewhat in excess of $2,000,000. These warrants, it is made appear, were issued from time to time, principally during the fiscal year ending June 30, 1911, in payment of the ordinary current expenses of maintaining the state government, and pursuant to valid legislative appropriations of the current revenues of the state, for which provision had been made by a levy of a tax, which, in addition to revenue derived from other sources, was believed to be sufficient to meet the appropriations against which the warrants were drawn.
It is alleged that the state has no funds with which to pay these warrants, and desires to fund the same by issuing its negotiable bonds, pursuant to law, and that its plan of refunding is agreeable to the holders and owners of the warrants. At the hearing certain citizens of the state filed protests raising the following legal questions: (1) That to issue funding bonds in excess of $400,000 would be in violation of section 23, art. 10, of the Constitution. (2) That article 7, Comp. Laws 1909, containing sections 408 to 421, inclusive, is a general act and repeals article 1, c. 8, Comp. Laws 1909, containing sections 372 to 381, inclusive, and therefore there is no lawful authority to fund or bond the indebtedness. (3) That section 3, art. 10, of the Constitution, and certain legislative enactments, provide for the payment of these warrants by the levy of a tax. (4) That to issue said bonds for a serial period as proposed in this proceeding would be in violation of section 4, of article 10 of the Constitution. (5) Revenue levied and collected for defraying expenses of state government for the fiscal year ending June 30, 1911, *Page 799 
cannot be applied to the payment of indebtedness accruing in a previous fiscal year.
The protests were treated as a demurrer in the court below and were sustained, and the right to refund the said warrant indebtedness was denied, to reverse which action and holding of the court this proceeding in error was commenced.
Whether the issuance of the proposed bonds is in violation of the section of the Constitution invoked depends upon whether or not issuing warrants or the incurring of obligations for the payment of the ordinary current expenses of maintaining the state government against legislative appropriations therefor, and within the estimated amount of the current revenues of the state, provided for the year in which the warrants are issued, is the creation of an indebtedness within the meaning of that section. Section 23, art. 10, Williams' Ann. Const. Okla., is as follows:
"The state may, to meet casual deficits or failure in revenues, or for expenses not provided for, contract debts; but such debts, direct and contingent, singly or in the aggregate, shall not, at any time, exceed four hundred thousand dollars, and the moneys arising from the loans creating such debts shall be applied to the purpose for which they were obtained or to repay the debts so contracted, and to no other purpose whatever."
Section 24 of the same chapter empowers the state to contract debts to repel invasion, etc., and section 25 provides that:
"Except the debts specified in section twenty-three and twenty-four of this article, no debts shall be hereafter contracted by or on behalf of this state, unless such debt shall be authorized by law for some work or object, to be distinctly specified therein; and such law shall impose and provide for the collection of a direct annual tax to pay, and sufficient to pay, the interest on such debt as it falls due and also to pay and discharge the principal of such debt within twenty-five years from the time of the contracting thereof. No such law shall take effect until it shall, at a general election, have been submitted to the people and have a majority of all the votes cast for and against it at such election. On the final passage of such bill in either House of the Legislature, the question shall be taken by yeas and nays to be duly entered on the journals thereof, and shall be: 'Shall this bill pass, and ought the same receive the sanction of the people.'"
The contention made here by those opposing the issuance of bonds, boldly stated, and stripped of its verbiage, is in its legitimate *Page 800 
effect that all the outstanding warrants of the state, no matter for what purpose issued, in excess of the limit named in section 23, art. 10, are void, and that, therefore, the state, not owing them, cannot issue bonds to pay them, as that would be the creation of a debt in violation of said limitation. If the state does not owe them already, or rather the sums they represent, then the contention is sound. On the other hand, if these warrants were issued legally, under the authority of other provisions of the Constitution, and laws in harmony with such provisions, and at the time of issue did not impinge upon that section — that is, if they were legal, and represented valid obligations in their inception, not inimical to that section, and the mere fact that, without fraud, and contrary to the reasonable provisions made by the officers for revenue, and contrary to their honest expectations, a failure of the anticipated and provided revenue prevents their payment — then can it be said that section 23, not operative at the time of their issue, becomes operative now, and makes that now invalid which when issued was valid? The language of section 23, read alone, and without considering other sections of the Constitution, is capable of such a sweeping construction. But it is a fundamental rule of construction that, to determine the meaning and scope of one provision of an act, it must be read in the light of, and with due regard for, other provisions of the act. A provision, however, is not always held to mean what its exact letter may imply where to so hold would be unreasonable or bring about an absurd result or would render nugatory other provisions. The old illustration of blood-letting in the streets is familiar to every lawyer. A statute provided that prisoners who escaped from jail should be hanged, but, when the prison caught fire and the prisoners escaped, the court did not sentence them to be hanged, and said that it was unreasonable that a man "should be hanged because he would not stay and be burnt."
It is well to remember that the state was created by the people to perform for them certain functions, and the necessity for the performance of these functions is the sole and only object of the creation of the state. The Constitution provides for a *Page 801 
Governor and the various other administrative officers of the state and prescribes the salaries they shall receive; for a legislative department, fixing the compensation of the legislators. It provides for a judicial system, stipulating the salary of the judges. These departments and co-ordinate branches of government are impotent in the performance of the various duties made mandatory by the Constitution, and necessary for the protection and well-being of the people, without other necessary subordinate officers, and the equipment and facilities needed in performing their required duties. It acknowledges it a duty to care for and maintain the insane and feeble-minded, and that the convicted criminals shall be restrained from going at large and preying upon and terrorizing society. It also provides for a free public school system, including higher education, and for the establishment and support of institutions for the care and education of the deaf, dumb, and blind. The maintenance of these things is absolutely necessary under any humane and modern system of government and they are not only pledged by the Constitution, but are ordained and established by its mandatory terms.
In this day of enlightened thought there is much controversy among students of government as to the proper and necessary limitations upon the powers of government; but it is now beyond the stage of controversy, agreed to and admitted by all learned men, that certain necessary and fundamental functions of government must always be expressed and actively exercised. The duty of protecting life, liberty, and property, and preserving peace and order cannot be delayed, nor can the power so to do be abdicated without the destruction of the state. These functions are elementary and indestructible. To say that warrants issued in payment of services and supplies under the express and necessarily implied commands of the other sections of the Constitution, to be paid out of cash in the treasury or current funds in process of collection, are in violation of section 23, as to any sum in excess of the limitations, is to subordinate these other sections of the Constitution to this one. It would render some of them contradictory or nugatory; and is a construction we do not believe was ever intended. To so construe it would mean that the section which *Page 802 
says that the Governor shall be paid $4,500 a year for his services must then be construed to mean only that the state will pay him this sum provided that it has the money, or does not already owe $400,000 for other things it has received at the time payment for his services is due.
These provisions are not peculiar to the Constitution of this state. The same, or provisions of similar import, are found in many of the later Constitutions. They have been reviewed and considered by the courts of the various states from many different angles, and under many different situations, but in our examination we have failed to find any case involving the identical conditions presented here. We do find, however, where constitutional provisions limiting the debt-creating power of municipal subdivisions of the state have been construed, in many cases, in relation to the extent of such limitations on the creation of indebtedness in the carrying on of the ordinary governmental functions. The language of these provisions is quite as absolute and sweeping as is that of the section of our Constitution under consideration. A fair example of these provisions is found in section 26, art. 10, of our Constitution, which provides that:
"No county, city, town, township, school district, or other political corporation, or subdivision of the state shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election to be held for that purpose," etc.
The authorities we shall cite and review will therefore, while dealing with municipal indebtedness, be equally applicable and in point in principle in dealing with state indebtedness.
It is frankly conceded that the adjudicated cases on this question are not in harmony. When these provisions first came before the courts, there was a decided tendency towards a strict construction of the language employed, and in many of the earlier cases they were held to include within their operation debts and liabilities for the ordinary current expenses of the municipal government. Springfield v. Edwards,84 Ill. 626; Law et al. v. People ex rel., 87 Ill. 388; Fullerv. Chicago et al., 89 Ill. 282; Prince v. City of Quincy,128 Ill. 443, 21 N.E. 768; Chicago v. *Page 803 McDonald, 176 Ill. 404, 52 N.E. 982. Illinois and other states still hold to this construction, but in a great majority of the states, where such limitations exist, it is held that, although the current expenses of a municipality for salaries of officers, court expenses, and other obligations arising in the conduct of municipal affairs create what is technically a debt until paid, yet, these expenses being intended in universal practice to be paid from cash in the treasury or from current revenue, that the power of the municipality to incur debts of this nature is not affected by the debt-limiting provisions of the Constitution. To illustrate, we quote from a few of the many decisions sustaining the above. In Grant v. Davenport, 36 Iowa, 396, in discussing a constitutional provision, "no county or other political or municipal corporation shall be allowed to become indebted in any manner or for any purpose," etc., the court says:
"When a contract made by a municipal corporation pertains to its ordinary expenses, and, together with other like expenses, within the limit of its current revenues and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute the incurring of indebtedness within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts."
And Justice Gordon, of the Pennsylvania Supreme Court, inAppeal of City of Erie, 91 Pa. 398, quotes the above language from the Iowa court, and adds:
"This we hesitate not to say is a sound constitutional interpretation, and in a similar case might well be adopted in the construction of our own Constitution. If the contracts and engagements of municipal corporations do not overreach their current revenues, no objections can lawfully be made to them, however great the indebtedness of such municipalities may be; for in such case their engagements do not extend beyond their present means of payment, and so no debt is created."
And in the case of Johnson v. Board of County Commissioners,7 Okla. 686, 56 P. 701, the Supreme Court of Oklahoma Territory, speaking through Justice Hainer, quotes with approval the following from the Supreme Court of South Dakota (Town Lot Co. v. Lane, 7 S.D. 1, 62 N.W. 982):
"The fact that a municipality is indebted to the full constitutional limit does not prevent the same from levying such taxes as *Page 804 
it is authorized to levy by law, and issuing its warrants, within the limits of such levy, in anticipation of their collection; and, so long as the warrants issued are within the amounts lawfully levied, they do not create an additional debt. To render such warrants invalid, it must affirmatively appear therefore that no tax had been provided for their payment when the warrants were issued."
Sackett v. City of New Albany, 88 Ind. 473, 45 Am. Rep. 467;Valparaiso v. Gardner, 97 Ind. 1, 49 Am. Rep. 416; Brashear v.Madison, 142 Ind. 685, 36 N.E. 252, 42 N.E. 349, 33 L. R. A. 474; Foland v. Frankton, 142 Ind. 546, 41 N.E. 1031; Board ofCommissioners of Perry Co. v. Gardner, 155 Ind. 165, 57 N.E. 908; Grant v. City of Davenport, 36 Iowa, 396; French et al. v.City of Burlington, 42 Iowa, 614; Tuttle v. Polk et al., 92 Iowa, 433, 60 N.W. 733; Creston Waterworks Co. v. City ofCreston, 101 Iowa, 687, 70 N.W. 739; City of Cedar Rapids v.Bechtel, 110 Iowa, 196, 81 N.W. 468; Adams v. City ofWaterville, 95 Me. 242, 49 A. 1042; City of Alpena v. Kelley,97 Mich. 550, 56 N.W. 941; McGrath v. Grout, 171 N.Y. 7,63 N.E. 547; Darling v. Taylor, 7 N.D. 538, 75 N.W. 766; Reutingv. Titusville et al., 175 Pa. 512, 34 A. 916; AddystonPipe Steel Co. v. City of Corry, 197 Pa. 41, 46 A. 1035; 80 Am. St. Rep. 812; Shannon v. City of Huron, 9 S.D. 356, 69 N.W. 598; In re State Warrants, 6 S.D. 518, 62 N.W. 101, 55 Am. St. Rep. 852; Western Town Lot Co. v. Lane, 7 S.D. 1, 62 N.W. 982;Rauch v. Chapman, 16 Wn. 568, 48 P. 253, 36 L. R. A. 407, 58 Am. St. Rep. 52; Hull v. Ames, 26 Wn. 272, 66 P. 391, 90 Am. St. Rep. 743; Gladwin v. Ames, 30 Wn. 608, 71 P. 189; Herman v. City of Oconto, 110 Wis. 660, 86 N.W. 681.
It must be noted, however, that the authorities recognize a distinction in the character of the obligation incurred, where the same is to be paid out of the revenues of future years. The test of this distinction is whether the obligation is within the ordinary and necessary current expense and essential to its regular corporate business and the performance of its ordinary governmental functions. If not, such obligations, intended to be a charge upon the revenues of future years, are regarded as debts within the meaning, and therefore violative of the constitutional limitations. This principle is applied in the case of Campbell v. State, *Page 805 23 Okla. 109, 99 P. 778. On the other hand, it has been held by many courts and with the approval of the Supreme Court of the United States in Walla Walla v. Walla Walla Water Co.,172 U.S. 1, 19 Sup. Ct. 77, 43 L.Ed. 341, that although the obligation may involve a charge against the revenues of future years, if they are for absolute necessities, things essential to the health and welfare of the people, and which it is contemplated by the law that the municipality, in the exercise of its delegated governmental powers, should furnish from day to day and from year to year, for the ordinary and necessary well-being of its people, then such obligations do not constitute debt within the meaning of the constitutional limitation. This question has been frequently raised in contracts by a municipality for the payment of an annual sum for water and light, extending through a period of years, and to be paid out of the revenues of such years. And while we disclaim any purpose of committing this court to the doctrine of these cases, as regards the charges upon the revenues of future years, yet we cite them for the reason that it is believed no sound or logical reason can be advanced for their decision except that necessary current expense is not thought to be within the intention of the constitutional limitations.Territory v. Oklahoma City, 2 Okla. 158, 37 P. 1094;Valparaiso v. Gardner, 97 Ind. 1, 49 Am. Rep. 416; Walla Wallav. Walla Walla Water Co. et al., 172 U.S. 1, 19 Sup. Ct. 77, 43 L.Ed. 341; Id. (C. C.) 60 Fed. 957; Illinois Trust Sav. Bankv. Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518; Ludington Water Supply Co. v. City of Ludington, 119 Mich. 480, 78 N.W. 558; City of Joseph v. Joseph Waterworks Co.,57 Or. 586, 111 P. 864, 112 P. 1083; Brown v. City ofCorry, 175 Pa. 528, 34 A. 854; Dallas Elect. Co. v. Dallas,23 Tex. Civ. App. 323, 58 S.W. 153; Tyler v. Jester, 97 Tex. 344,78 S.W. 1058; McNeal v. City of Waco, 89 Tex. 83,33 S.W. 322.
From an examination of the foregoing, and many other authorities which could be cited, it will be seen that the courts have found that it is necessary, not only to consider the language used in a section, but to also consider the practical situation to which it is intended to apply, in connection with the other *Page 806 
sections of the Constitution, and to the end that all may be given the proper and logical effect intended by the lawmakers. As has been seen, our Constitution requires the performance of many distinct governmental functions day by day and year by year, so, when this provision is construed as not intending necessary current expense in good faith provided for within its limitations, it merely means that this section shall not be so applied as to defeat the other provisions, providing for the continued existence of the government, through the continuous performance of its governmental duties. It may be added that our Constitution was written and adopted long after similar provisions in other Constitutions had been construed by the courts; and it may be assumed that the framers of that document and many of our citizens were familiar with those decisions at the time it was written and adopted. We therefore feel constrained to follow the construction placed on practically the same language by so many of the states before we incorporated it into our own Constitution.
Section 2, art. 10, Williams' Ann. Const. Okla., provides for maintaining the state government by an annual tax, which with other resources shall be sufficient to meet the estimated ordinary expense for each fiscal year. The only limitation on this amount (section 9, art. 10) is that it shall not exceed in any one year three and one-half mills on the dollar for state purposes. Section 3, art. 10, subject to no other limitation, provides:
"Whenever the expenses of any fiscal year shall exceed the income, the Legislature may provide for laying tax for the ensuing fiscal year, which with other resources, shall be sufficient to pay the deficiency, as well as the estimated ordinary expenses for the state for the ensuing year."
This section by its terms shows that it was not intended that, because the expenses of a year might exceed the income for that year, such excess should be invalidated. And we may add that we find no purpose in the Constitution to attach any penalty or forfeiture to obligations for current expenses, honestly incurred in the reasonable anticipation that the revenues provided therefor would be sufficient to meet them. It is believed *Page 807 
that these limitations were intended to prevent the contracting of that class of pecuniary obligations not to be satisfied out of the current yearly funds, or other funds in hand lawfully applicable thereto; and which would, therefore, at the date of the contract, be an unprovided for liability and properly included in the general meaning of the word "debt."
There is no contention here that the debts which were incurred, and are evidenced by the warrants sought to be funded, exceeded, at the time the debts were incurred, the revenue provided in good faith for that year. We therefore have the right to assume that such is not the case, and that, if the revenue provided had been collected and properly applied, they would have been paid. Tyler v. Jester, 97 Tex. 344,78 S.W. 1058. If it has been made clear, as we believe it has, that the debts represented by the warrants were legal at the time when made, and that, therefore, the warrants sought to be funded are legal warrants, it ought to be then conceded as fundamental that no subsequent act or misappropriation, or failure of the funds in good faith provided for, can operate to render them invalid. We cite, however, a few authorities in point. In Judge Dillon's work on Municipal Corporations (5th Ed.) sec. 195, it is said:
"Although the constitutional limit has been reached, warrants may be issued for the ordinary current expenses of the fiscal year to the full amount levied for that year, without incurring indebtedness beyond the constitutional limit. So long as the amounts of such warrants do not in the aggregate exceed the current revenues, no additional indebtedness has been incurred thereby, and usually warrants thus drawn are payable in the order of presentment for registration. Being legal warrants when issued, no subsequent act or misappropriation of funds by the municipal authorities can operate to render them invalid."
And in Addyston Pipe Steel Co. v. City of Corry, 197 Pa. 49, 46 A. 1036, 80 Am. St. Rep. 812, we find the following:
"It is not, however, always possible to adapt present action to future results with absolute precision, and if means are adopted which in good faith, according to reasonable expectation, will produce a sufficient fund, the contract entered into on the faith of them should not be held unlawful on account of an unintentional miscalculation, or an accidental and unexpected failure *Page 808 
to produce the full result. Thus if a city at the time of making a contract levies a special tax in good faith supposed to be adequate to meet it, but in consequence of fire or flood or decline in values the result is an insufficient fund, it cannot be held that the contract good at its inception would thereby be made bad. The constitutional restriction was not intended to make municipalities dishonest, nor to prevent those who contract with them from collecting their just claims, but to check rash expenditure on credit, and to prevent loading the future with the results of present inconsiderate extravagance."
See, also, Cedar Rapids v. Bechtel, 110 Iowa, 196, 81 N.W. 468; Shannon v. Huron, 9 S.D. 356, 69 N.W. 598; In re StateWarrants, 6 S.D. 518, 62 N.W. 101, 55 Am. St. Rep. 852; WesternTown Lot Co. v. Lane, 7 S.D. 1, 62 N.W. 982.
If the state, in fact, then owes the sums represented by these warrants, it is within the power of the Legislature to provide for their payment in any manner it may choose, so long as it does not violate a constitutional provision. These constitutional limitations under discussion, being obviously directed against the contracting of debts, can have no application to the manner in which valid debts may be evidenced. That the issuing of funding bonds in lieu of a valid pre-existing indebtedness neither creates a debt nor increases the indebtedness of the municipality issuing them has been held in Re Menefee, 22 Okla. 365, 97 P. 1014, and in State ex rel.Bd. of Education of Oklahoma City v. West, 29 Okla. 503,118 P. 146, and is so held by the weight of authority in other states. Independent School Dist. v. Rew, 111 Fed. 1, 49 C. C. A. 198, 55 L. R. A. 364; Los Angeles v. Teed, 112 Cal. 319, 44 P. 580; Lake County v. Standley, 24 Colo. 1, 49 P. 23;Powell v. Madison, 107 Ind. 106, 8 N.E. 31; Marion County v.Harvey County, 26 Kan. 181; Gaulbert v. Louisville (Ky.) 97 S.W. 342; Opinion of the Justices, 81 Me. 602, 18 A. 291;Hotchkiss v. Marion, 12 Mont. 218, 29 P. 821; Poughkeepsie v.Quintard, 136 N.Y. 275, 32 N.E. 764; Blanton v. McDowellCounty, 101 N.C. 532, 8 S.E. 162; Morris v. Taylor, 31 Or. 62, 49 P. 660; McCreight v. Camden, 49 S.C. 78, 26 S.E. 984;Lawrence County v. Meade County, 10 S.D. 175, 72 N.W. 405;Miller v. School Dist., *Page 809 5 Wyo. 217, 39 P. 879; Maish et al. v. Ter. of Arizona,164 U.S. 599, 17 Sup. Ct. 193, 41 L.Ed. 567; Jasper County v.Ballou, 103 U.S. 745, 26 L.Ed. 422. Under the rule that a refunding transaction does not create debt, the question of having to resort to section 25, art. 10, Williams' Ann. Const. Okla., is eliminated.
This leads us to the question: Has the Legislature provided procedure for the refunding of state indebtedness such as is herein involved? Sections 372 to 381, inclusive, Comp. Laws 1909, furnish such procedure if in force. The funding act was passed in 1895 (Laws 1895, p. 63), and was amended in 1897-1899. The amendment of 1897 (Laws 1897, p. 75) is section 372. The amendment of 1899 (Laws 1899, p. 100) is article 3 of chapter 8, being section 394, Comp. Laws 1909. In 1905 (Laws 1905, p. 87) an act entitled "An act to enable counties, municipal corporations, the boards of education of any city or school districts to refund their indebtedness," was passed by the Legislature, the same being article 7, c. 8, Comp. Laws 1909, and consisting of sections 408 to 421, inclusive.
The contention is made that this act of 1905 repeals the former acts, thereby leaving no statutory provisions affording authority for refunding the warrant indebtedness of the state. We cannot agree to this construction.
It is a familiar rule that repeals by implication are not favored, and, where two statutes covering in whole or in part the same matter are not absolutely irreconcilable, effect should be given, if possible, to both. Carpenter v. Russell'sAdm'r, 13 Okla. 277, 73 P. 930. In Sutherland on Stat. Const. 138, we find:
"Subsequent legislation repeals previous inconsistent legislation whether it expressly declares such repeal or not. In the nature of things it would be so, not only on the theory of intention, but because contradictions cannot stand together. The intention to repeal, however, will not be presumed, nor the effect of repeal admitted, unless the inconsistency is unavoidable, and only to the extent of the repugnance. Implied repeals are not favored. One statute is not repugnant to another, unless they relate to the same subject, and are enacted for the same purpose. When there is a difference in the whole purview of two statutes *Page 810 
apparently relating to the same subject, the former is not repealed. Such is the general doctrine, in which all the cases concur."
Endlich on Stat. Const. sec. 741, says:
"But, in order to constitute a repeal of a statute by implication, such later act must not only refer to the same subject, and also have the same object in view as the earlier, but it must cover the whole subject-matter of the same."
While the act of 1905 expressly repealed all "acts and parts of acts in conflict herewith," and while it covered fully the matter of refunding the warrants of municipal corporations, school districts, etc., as named therein, the matter of state warrants is nowhere mentioned. Therefore it could hardly be said that the provisions for funding state warrants collide with the provisions of an act that has no reference to state warrants, and, in fact, does not deal with the subject in any way. This being so, the presumption must be indulged that there was no intention to make any change in the law relating to state warrants. State v. Oldfield, 22 Okla. 863, 98 P. 925. This court has held in State ex rel. Bd. of Ed. v. West, Atty.Gen., 29 Okla. 503, 118 P. 146, that the act of 1905 (article 7, c. 8, Comp. Laws 1909) was not repugnant to section 26, art. 10, Williams' Ann. Const. Okla., and was therefore extended over and put in force in the state by section 2 of the Schedule. There can be no reason why the same rule should not apply to article 1, c. 8, Comp. Laws 1909, which provides for funding state warrants, and notwithstanding the fact that section 3, art. 10, of the Constitution provides a method of extinguishing this indebtedness by the levy of a tax for the ensuing year.
The provision made in section 3, art. 10, of the Constitution as vitalized by section 7621, Comp. Laws 1909, while a remedy, is not exclusive. We have held that, the indebtedness represented by these warrants being valid at their inception, no subsequent act or failure of the revenues can operate so as to invalidate them. To hold that section 3, art. 10, and section 7621, Comp. Laws 1909, provide an exclusive remedy, would in practical effect have that result. It would leave the state with a large valid debt outstanding, and with no practical means of extinguishing *Page 811 
it. This would be no less than repudiation, and we have discovered no disposition upon the part of the people of Oklahoma to repudiate their just obligations. We believe the remedies to be concurrent, and that it is within the sound discretion of the chief officers of the state to select the one they will pursue, as best calculated to subserve the best interests of the taxpaying public. That they have chosen wisely seems obvious.
It would be a great hardship for the people to be compelled to pay this entire indebtedness in one year, in addition to the necessary expenses of government, by immediate taxation. It would seem to be much wiser if this indebtedness is met by the issuance of long time, low interest bearing bonds as is proposed. In the meantime our financial policy and revenue laws will have become settled, and the taxation of much of the Indian lands, now nontaxable, which fact contributed towards this deficiency, will have become liable to bear their share of the burdens of government.
The next point made is that the State Treasurer has applied the revenues collected for one fiscal year to the payment of indebtedness of another fiscal year, and that certain funds in the hands of the Treasurer ought to be applied to the payment of some of the warrants involved in this proceeding. It is clearly contemplated by the Constitution that the funds provided and collected for a particular fiscal year should be applied to the payment of the current indebtedness of such year. The condition here was brought about through the Treasurer following an old precedent in force in that office for several years prior to his incumbency whereby warrants were paid in the order of their registration; but the record shows that the Treasurer is now keeping his accounts in such a way as to meet the views herein expressed.
We have already shown that warrants valid in their inception cannot be rendered invalid by any subsequent act or omission of the officers of the state; hence it follows that the mere fact that revenues accruing in one year have been improperly applied to the extinguishment of the indebtedness of another year cannot have that effect. Any funds in the hands of the Treasurer *Page 812 
collected for the purpose of defraying the ordinary expense of any fiscal year, ought to be applied to that purpose without delay, thus reducing the warrant indebtedness to that extent, and stopping the running of interest thereon. Besides, this is due the holders of such warrants.
We think the time and manner of the payment of bonds to be issued for the purpose designated herein are controlled by section 377, Comp. Laws 1909, and that section 4, art. 10, Const., which requires the Legislature to provide for the payment of the state debt within 25 years, has reference to a debt created by the passage of a law, inasmuch as it provides that provisions must be made "to pay the annual interest and principal of such debt within twenty-five years from the final passage of the law creating such debt." It has been shown that the issuance of bonds to take up outstanding legal indebtedness is not the creation of a debt. This section of the Constitution has reference to debts created under sections 23-25, art. 10, of the Constitution.
The judgment of the trial court is accordingly reversed, and the cause remanded to be proceeded with in accordance, with the views herein expressed.
TURNER, C. J., and HAYES, WILLIAMS and KANE, JJ., being disqualified, the Governor appointed Messrs. J. D. CARMICHAEL, MALCOLM E. ROSSER, J. B. HARRISON, and P. D. BREWER to sit in their places in the consideration and decision of this case.
DUNN, J., and ROSSER, Special Justice, concur. CARMICHAEL and HARRISON, Special Justices, dissent. *Page 813