# DAVENPORT *vs.* The *inhabitants of* HALLOWELL.

A warrant calling a town meeting contained an article in the following words, *viz.:* "To see what measures the town will take to provide a workhouse, " *or* house of correction, for the reception, support and employment of the " idle and indigent, and such other persons as by law be liable to be sent to " such house, for the purposes aforesaid, and for the *superintendance* of the " same." *Held,* that this was sufficient to authorize a vote, empowering the Selectmen to contract with some person to support the poor for one year — such town having practiced for several years the making of similar contracts, under the authority of similar articles.

A contract made by the Selectmen under the following vote, *viz. :* " That the " Selectmen receive sealed proposals for the maintenance of the poor for one year," " and that they contract with some suitable person for that period, and "report at the adjournment of the meeting," is binding on the town, though it provide for the relief of paupers belonging to other towns, falling into distress and needing relief in said contracting town — and though it make provision for the payment of the expenses of litigation respecting the paupers of said town.

Such contract would be obligatory upon the town without a formal *acceptance* thereof by vote.

Where a town, having contracted with an individual for the support of the poor of such town, for one year, for an agreed compensation, afterward refused to permit him to perform his contract, and he brought *assumpsit* to recover dam-

ages for thus preventing his performance of the contract, whereby he might have earned the stipulated sum, it was *held*, that he well might pursue his remedy in this form of action.

A town has the legal power of making a contract for the support of its poor, *prospective* in its terms.

THIS was an action of *assumpsit* to recover damages for the breach of an agreement made, as alleged, by the defendants with the plaintiff for the support of the poor of the town of *Hallowell* for one year. Plea, the general issue. In support of the action the plaintiff introduced the records of the town of *Hallowell*, by which it appeared that a meeting of the inhabitants of said town was held, *March* 15, 1830. In the warrant calling said meeting, the 7th article was in the following words, *viz.* : " To " grant such sum or sums of money as shall be thought neces- " sary for the maintenance of the poor, and other necessary " town charges the present year." *Article* 9*th* was, " To see " what measures the town will take to provide a workhouse or " house of correction, for the reception, support and employ- " ment of the idle and indigent, and such other persons as may " by law be liable to be sent to such house for the purposes " aforesaid, and for the superintendance of the same."

At the meeting on the 15th of *March*, the following vote was passed, *viz.* " Voted, that the Selectmen receive sealed " proposals for the maintenance of the poor for one year from " the thirteenth day of *May* next ; and that they contract with " some suitable person for that period, and report at the ad- " journment of this meeting." The meeting was adjourned to the 26*th of April.*

In pursuance of the foregoing instructions, on the 24*th of April*, the Selectmen (who had been chosen at the meeting on the 15th *March*,) contracted with the plaintiff to support the poor of said town for one year from the 13*th of May*, for the sum of \$900, he giving bond with sureties in the penal sum of \$2000, for the faithful performance of the contract on his part.

At the adjourned meeting on the 26*th of April*, the Selectmen reported to the town the agreement they had entered into with the plaintiff, and the bond they had taken ; where- upon the inhabitants voted *not to accept said agreement*, but to

contract with one *Ebenezer Freeman* for the support of the poor for the same period.

It was admitted that the plaintiff had offered to perform his part of the agreement, but was not permitted to do so by the defendants.

It appeared that for the three preceding years there was a vote of acceptance of similar contracts, under similar articles; but for five years next before that period no such vote of acceptance appears on the records of the town.

The counsel for the defendants contended, 1. That neither the 7th or 9th articles warrant the contract. 2. That by the former practice of the town *acceptance* by them was necessary to complete the contract.

3. That the vote only authorized the Selectmen to contract who were actually in office on the day when it passed.

4. That the condition of the bond was larger than the power given by the vote.

5. That towns have no right to make such *prospective* contracts.

6. That performance having been prevented by the defendants, *assumpsit* was not the proper remedy.

A verdict was taken for the plaintiff, subject to the opinion of the whole Court on the foregoing objections. If either of them should be considered as fatal to the action the verdict was to be set aside, and the plaintiff to become nonsuit, otherwise judgment was to be rendered thereon.

*Clark*, for the defendants.

1. Neither the 7th or 9th article in the warrant calling the town meeting of the 15*th March*, authorized the making of this contract.

These articles were so general in their terms, that no notice was thereby given to the inhabitants of the town, that the making of any such special contract was contemplated.

The *appropriation* of money, is quite a different thing from *raising* it. These articles were for *raising* it, whereas the contract was for appropriating it. *Blackburn v. Walpole,* 9 *Pick.* 97.

2. From the former practice of the town *acceptance* by them was necessary to complete the contract. This must have been understood by the inhabitants, and the plaintiff among the rest, when the vote was passed requiring the Selectmen to report to the adjourned meeting. This had been the *usage.* *Stevens v. Reeves*, 9 *Pick.* 198; *Phelps & al. v. Townsend*, 8 *Pick.* 392.

3. The condition of the bond was larger than the power. The authority granted in the vote is, for the Selectmen to receive sealed proposals for the maintenance of *the poor* for one year, &c. This can only apply to the poor who resided in, or properly belonged to the town. It cannot be construed to embrace cases of paupers belonging to other towns needing support in the town of *Hallowell.* But the contract provides for the maintenance of the latter. It also provides for all the litigation in regard to the poor, which was exercising a power not conferred by the vote, and the whole proceeding is therefore void. *Snow v. Perry*, 9 *Pick.* 539.

4. Towns have no right to make such contracts. — Certain duties are imposed upon towns, such as making roads, supporting the poor, &c. But provision should be made for these duties as the cases calling for their exercise occur. They have no right to make a prospective contract providing for indemnity for the non-performance of a duty that may never occur.

5. By the vote, those Selectmen only were authorized to contract who were Selectmen at the time the vote passed. In this case, the Selectmen who have undertaken to contract, were chosen after the passing of the vote conferring the authority to act in this matter. The use of the term, *Selectmen,* was merely to designate the individuals who were to act as the committee, and not for the purpose of empowering them in their official capacity.

6. Performance having been prevented by the defendants, *assumpsit* is not the proper remedy. It should have been *case.* *Lawes on Pleading in assumpsit*, 8, 13, 35.

*Sprague,* for the plaintiff, to the last point, cited *Hoyt v. Wildfire*, 3 *Johns. R.* 518; *Lawes on Plead.* 11. His answers to the other objections raised by the defendants were fully sustained by the Court.

The opinion of the Court was delivered by

Mellen C. J. — The object of the present action is, to re-cover damages against the defendants, for depriving the plaintiff of the benefits of a contract he alleges he had made with them, for the support of their poor, for a certain time, by refusing to permit him to execute the contract on his part ; which he says is in violation of their promise. It appears that the Selectmen, who were also overseers of the poor of the town of *Hallowell*, made a contract with the plaintiff to support the poor of that town for the term of one year, commencing on the 13th of *May*, 1830, for the sum of nine hundred dollars. In order to ensure the faithful performance of the contract on the part of the plaintiff, the defendants required of him a bond, with sure-ties, which was accordingly furnished ; but the obligation of the town to pay the nine hundred dollars, depended on the contract as above stated. The defendants contend, that the contract was made without any legal authority, and that, of course, they are not bound by it ; and, if they are bound by it and are liable in damages to the plaintiff, such damages cannot be recovered in an action of *assumpsit*. This *last* objection we will consider in the *first* place. Notwithstanding the author-ities which have been cited by the counsel for the defendants, seem at first view to sustain, or at least to countenance the ob-jection, we apprehend that they do not decide the question. It is true that, where *one* party to a contract refuses to permit the *other* to perform it, and thus entitle himself to those advantages he might have realized from its performance, no action can be maintained against the refusing party *on the contract* as a basis, on which to recover the *agreed compensation* ; but the remedy to recover damages for the injury sustained by such breach and refusal is by a special action — setting forth the circumstances particularly. In some cases this has been an action in nature *of tort* ; in others, an action of *assumpsit*. In the case before us there seems to be nothing resembling a tort ; the only act of the town has been a refusal on their part to permit the plaintiff to take the charge and superintendence of the poor, according to the agreement of the Selectmen, and by supporting them through the year, to earn the stipulated sum of nine hundred

dollars. Independently of the *contract* of the Selectmen, the plaintiff could have no remedy against the town of *any* kind; more than he could against any *other* town in the county. We perceive no objection to the maintenance of the present action, if, on the merits, the action is sustainable.

The next question is whether the town is bound by the contract made by the Selectmen and overseers. We do not, on this occasion, mean to go into an examination, as to the extent of the authority which overseers of the poor possess, *merely* in virtue of their office, and independent of any *express* authority given to them by the town; but shall confine ourselves to the inquiry whether the votes of the town authorized them to make the contract with the plaintiff. The 7th article in the warrant for calling the town meeting to be holden on the 15th of *March*, 1830, is in these words; *viz. :* " To grant such sum or " sums of money as may be thought necessary for the mainte- " nance of the poor, and other necessary town charges, the pre- " sent year." For several preceding years the town had acted, on the subject of the poor, under articles in the warrants, for the annual meetings, in precisely the same language. The 9th article was, " to see what measures the town will take to provide " a workhouse, *or* house of correction for the reception, sup- " port and employment of the idle and indigent, and such other " persons as may by law be liable to be sent to such house for " the purposes aforesaid, and for the superintendence of the " same." At the meeting, held under the said warrant and article, the town voted, " that the Selectmen receive sealed pro- " posals for the maintenance of the poor for one year from the " thirteenth day of *May* next; and that they contract with some " suitable person for that period, and report at the adjournment " of this meeting." Under this vote the Selectmen acted in making the contract; and, having made it, on the day of adjournment, the town voted, under the 7th article, to raise money for the support of the poor and other necessary town charges for the year. It is worthy of special notice, that though the defendants now contend that, under the above article, the Select- men had no right to make the contract in question, yet, after refusing to accept it, the town, at once proceeded to accept the

proposal of *Ebenezer Freeman.* Surely, the town, in open meeting, had no more authority, by a vote, to close a contract with *Freeman,* under the authority of the above article, than the Selectmen had, as agents of the town and in behalf of it, to close a contract with *Davenport.* It shews the understanding of the town, and their construction of the article. This article may be considered as referring to, and authorizing the town to avail itself of the provisions contained in the first section of the act of *February* 28th, 1829. The language of the section is, " that " the Selectmen of any town in this State, which *has* erected, " or *may hereafter* erect a house of correction, or *shall have* ap- " propriated *any poor house* for *that* purpose, may appoint a " board of overseers of such house of correction, to consist of " seven, five or three able and discreet persons, whose duty it " shall be to appoint some suitable person for a master or keep- " er thereof, *except* when the *poor house has been* or *shall be* ap- " propriated for *that purpose :* in which case the *overseer of the* " *poor house* shall be *master* of such *house* of *correction,*" &c. &c. The foregoing section, in connection with the ninth article in the warrant, we consider as having authorized the Selectmen to make the contract for, and in behalf of the town, (unless some of the other objections which have been urged are sustained) and thereby to constitute the house of *Mr. Davenport,* as the *poor house* for the year above-mentioned, and *Davenport* as the *overseer* of it, and *master* of it as the *house of correction.*

The next objection in the order of time is, that the Select-men who made the contract, were not those intended by the ninth vote. *One* answer to this objection is, that the Select-men *for the time being* answer to the description in the vote; and *another* is, that the persons who made the contract had been chosen Selectmen on the 15th of *March* preceding. Another objection is, that the condition of the bond given by *Davenport* is broader than the power given by the vote. The answer to this is, that by the terms of the condition he was not bound to do more than the town would have been bound to do, provided no contract had been made with *any one* for the maintenance of the poor during the year in question ; nor, are we to presume, was the town, by the terms of the contract, bound to pay him

a greater sum than would have been expended by the town, had no contract been made. Another objection is, that *Mr. Davenport* was not a *suitable* man for overseer of the poor house. The answer is, that by the vote, the Selectmen were constituted the judges of his suitableness. Another objection is, that towns have no right to make such a *prospective* contract. How then could they make such a contract with *Freeman?* From necessity *prospective* contracts must be made, or the poor of our towns would be destitute of food, and raiment, and the common comforts of life. The last objection is, that the contract was never *accepted* by the town. *One* answer is, that by the terms of the vote, under the authority of which the contract was made, it did not require any acceptance, in order to make it obligatory on the town. The Selectmen were clothed with full powers to make the contract; and it is evident that the object in view in requiring a report by them to the town, was, that it might be known what sum ought to be raised for the support of the poor for the year ensuing. *Another* answer is, that the town has not considered a vote of acceptance as essential. It is true, that in the years 1827, 1828 and 1829, votes of acceptance were passed; but in the five next preceding years, no such votes were passed, or deemed of any importance. We have thus examined and answered all the reasons and arguments urged in support of the motion for a new trial, and all that remains is, to render

*Judgment on the verdict.*