### CITY OF MICHIGAN CITY v. LEEDS.

[No. 2,924.   Filed Dec. 22, 1899.   Rehearing denied March 7, 1900.]

MUNICIPAL CORPORATIONS.—*Lease.—Execution by Mayor.*—A lease of rooms for a period of ten years by the mayor of a city for city offices, under a resolution adopted by the council authorizing him to rent the rooms, is binding on the city, although the lease was not reported to nor accepted by the council, where the city went into possession of the rooms under the terms of the lease, occupied them for more than a year, and paid the rent quarterly, as provided in the lease. *pp. 271-275.*

LANDLORD AND TENANT.—*Lease.—Oral Modification.*—Where a written lease of rooms for a period of ten years was essentially modified by an oral agreement, the lease thereby became a parol contract, and the tenancy, in the absence of an agreement as to duration, became a tenancy from year to year. *pp. 275-278.*

From the LaPorte Circuit Court.   *Reversed.*

*F. E. Osborn, H. W. Sallwasser, M. T. Krueger* and *W. H. Breece,* for appellant.

*J. F. Gallaher* and *J. H. Bradley,* for appellee.

ROBINSON, J.—Appellant's common council, by resolution, authorized its mayor to contract with appellee for the rental of four rooms on the second floor of a certain building, at not to exceed $20 per month, for city office use. On June 15, 1895, the mayor leased in writing from appellee, for the city, rooms two, four, five, and eleven, at the place designated by the resolution, for ten years, at $20 per month, payable quarterly, commencing July 1, 1895, the lease to end in case the city erected a building of its own. The lease was not reported to the council, nor entered on the

city records, but was filed in the city clerk's office. On June 15, 1895, the city took possession and used the rooms for offices until "some time in October, 1895," when, with appellee's knowledge and consent, it vacated rooms two and four, and occupied seven and nine on the same floor. Sometime after June, and prior to October, the appellant, with appellee's knowledge and consent, commenced using room ten on the same floor. The city paid $2 per month rent for room ten up to July 1, 1896, and $20 per month, quarterly, for the other rooms, to the same date. On June 9, 1896, pursuant to a resolution by the council, notice was given appellee that the city would vacate the rooms occupied by it on or before August 1, 1896. On July 15, 1896, appellant vacated rooms five, seven, nine, ten, and eleven, and caused an order to be drawn on its treasurer for $22 rent for July, 1896. June 22nd appellee refused to accept possession or surrender her rights under the lease. Appellant paid $60 quarterly, commencing July 1, 1895, and every three months up to July 1, 1896. No rent was paid for the quarters ending September 30th and December 31, 1896. As conclusions of law the court stated that the lease was valid, and that appellee was entitled to receive as rent and interest thereon $124.30.

The questions discussed by appellant's counsel relate to the motion for a new trial and the conclusions of law. In discussing questions arising on the admission and exclusion of certain evidence, appellant's counsel have failed to comply with that part of rule twenty-five of this court providing that, "in discussing questions arising on the admission or exclusion of evidence, counsel shall refer to the particular testimony, and specify by pages and lines the part of the record where it appears, and shall also state specifically the nature of the evidence and the objections thereto." In no instance has any attempt been made to comply with this rule. *Smiser* v. *King*, 17 Ind. App. 519; *Harness* v. *State*, 143 Ind. 420; *Evans* v. *Koons*, 10 Ind. App. 603; *Toledo, etc.*,

*R. Co.* v. *Hauck*, 8 Ind. App. 367; *Memphis, etc., Co.* v. *Pikey*, 142 Ind. 304.

In the case at bar the lease is for rooms to be used as city offices for the period of ten years, with the proviso that if at any time during that period the city should erect a building of its own for such purposes, the lease should end. The city had power to enter into such a contract, and the question is whether the mayor had authority under the resolution to bind the city in such a lease.

A city has the right to erect or lease a building for city purposes, and provide suitable accommodations for the transaction of municipal business. This is a necessary incident to the administration of the municipal government, and is a right essential for the accomplishment of the purposes of the city's creation.

In *City of Vincennes* v. *Citizens, etc., Co.*, 132 Ind. 114, 16 L. R. A. 485, in speaking of the power of a city to contract for a supply of gas or water, the court said: "The length of time for which they shall bind their towns or cities depends upon so many circumstances and conditions as to situation, cost of supply, and future prospects, that the courts can interfere only in extreme cases and upon seasonable application. We cannot say that twenty-five years is an unreasonable time for which to contract for a supply of light or water." See *City of Valparaiso* v. *Gardner*, 97 Ind. 1.

A distinction is drawn between those powers of a municipal corporation which are of a legislative character and those which are of a business nature. Thus, it is said, the power to execute a contract for goods, for houses, for gas, for water, and the like, is neither a judicial nor a legislative power, but is a purely business power. *City of Valparaiso* v. *Gardner, supra; Kramrath* v. *City of Albany*, 127 N. Y. 575; *Western Saving Fund* v. *City of Philadelphia*, 31 Pa. St. 175. See *Willard* v. *Newburyport*, 12 Pick. 227; *Davenport* v. *Hallowell*, 10 Me. 317.

If a contract is within the scope of the corporate powers, and is not one which the charter requires should be made in a particular manner, the corporation may be bound by an implied contract made by its agent, and to be deduced from corporate acts, without a vote of the governing body. *Kramrath* v. *City of Albany*, 127 N. Y. 575; *Bank of Columbia* v. *Patterson*, 7 Cranch 298; Dillon Mun. Corp., §§383, 384; 2 Kent Com. 291.

If the contract is not *ultra vires*, is not against public policy, and not fraudulent, it must be enforced the same as the contract of a business corporation or private person. *City of Indianapolis* v. *Indianapolis, etc., Co.*, 66 Ind. 396. It is true that a person contracting with a municipal corporation must, at his peril, inquire into the power of the corporation or of its officers to make the contract. But in this case there is no question but that the city had the power to lease the rooms, and the only question is whether the mayor, acting for the city under the resolution, might make the lease.

In 1 Dillon Mun. Corp. (4th ed.) §450, the author says: "The authorized body of a municipal corporation may bind it by an ordinance, which, in favor of private persons interested therein may, if so intended, operate as a contract; or they may bind it by resolution, or by vote clothe its officers, agents, or committees, with power to act for it; and a contract made by persons thus appointed by the corporation, though by parol, unless it be one which the law requires to be in writing, will bind it." See *Abby* v. *Billups*, 35 Miss. 618; *Fanning* v. *Gregoire*, 16 How. 523; *Bellmeyer* v. *Marshalltown*, 44 Iowa 564; *Over* v. *City of Greenfield*, 107 Ind. 231; *Ross* v. *City of Madison*, 1 Ind. 281, 48 Am. Dec. 361; *City of Indianapolis* v. *Skeen*, 17 Ind. 628.

It cannot be said that the resolution of the council necessarily contemplated a lease from month to month, any more than it contemplated a lease for one month. It was not necessary that there should be a formal acceptance of the

lease by the council.  The city went into possession under the lease, continued in possession a little more than a year, and paid the rent quarterly as indicated in the lease.  The city must necessarily supply rooms for the transaction of city business, and a lease of such rooms for ten years, unless the city should erect a building of its own, was a business power the city might exercise, or appoint an agent to exercise for it.  The mayor had authority, under the resolution, to execute such a lease, and even if it should be conceded that he exceeded his authority, the conduct of the city afterward must be held a ratification.

A more difficult question arises as to the effect of the oral agreement whereby certain rooms leased were exchanged for certain other rooms.  The written lease, when executed, bound the city for ten years.  But, after the change of rooms was made, one of the essential elements of the contract was then evidenced by an oral agreement.  The oral variation was made in respect of a material particular of the contract. It is well settled by the courts of this State that a contract part written and part oral is a parol contract.  *Pulse* v. *Miller*, 81 Ind. 190; *Louisville, etc., R. Co.* v. *Reynolds*, 118 Ind. 170; *Tomlinson* v. *Briles*, 101 Ind. 538; *Board* v. *Shipley*, 77 Ind. 553; *McCurdy* v. *Bowes*, 88 Ind. 583; *Gordon* v. *Gordon*, 96 Ind. 134.

If an oral contract is made with reference to two subject matters, one of which would not be within the statute of frauds and the other would, such contract is not severable, and cannot be enforced.  See *Rainbolt* v. *East*, 56 Ind. 538, 26 Am. Rep. 40; *Becker* v. *Mason*, 30 Kan. 697; *Pond* v. *Shean*, 132 Ill. 312; *Caylor* v. *Roe*, 99 Ind. 1.

"It is clear that if the several stipulations are so interdependent that the parties cannot reasonably be considered to have contracted but with a view to the performance of the whole, or that a distinct engagement as to any one stipulation cannot be fairly and reasonably extracted from the transaction, no recovery can be had upon it, however clear

of the statute of frauds it may be or whatever be the form of action employed. The engagement in such case is said to be entire and indivisible." Browne Stat. Frauds (4th ed.) §140.

Appellee, in effect, now sues on a contract which the statute of frauds requires to be in writing, but which is in fact partly written and partly oral. It is true the parties could have made two contracts of leasing, but it is evident from the record that they did not. From the whole record it cannot be said that the parties intended to include part of the premises in one contract and part in another. But it is evident that it was intended the leasing should be under one contract. The rent for all the premises was at a gross sum per month, and there is nothing from which it can be said that the contract was severable. As the written contract, by the oral variation, became a parol contract, the effect of such variation was an abandonment of the written lease, and the making of a new contract at the time the change in the premises took place. The right to enforce the written lease was lost by reason of the subsequent oral variation.

In Browne on Stat. Frauds (4th ed.) §411, it is said: "It seems to be well established that where a contract, affected by the statute, has been put in writing, and the plaintiff, in a case of subsequent oral variation of some of the terms of the written agreement, declares upon the writing as qualified by the oral variation, he cannot prevail." And so it is held that a memorandum, required by the statute to be in writing, must set out the contract with such certainty that its terms may be understood from the writing itself, without recourse to parol proof. *Ridgway* v. *Ingram*, 50 Ind. 145, 19 Am. Rep. 706; 2 Kent Com. 511; *Norris* v. *Blair*, 39 Ind. 90, 10 Am. Rep. 135.

In *Goss* v. *Nugent*, 5 Barn. & Ad. 58, by a written agreement appellant contracted to sell appellee several lots of land, and to make a good title. It was afterwards verbally agreed that the vendee should waive the title as to one of

the lots. Vendee took possession of the whole of the lots. The vendor sued for the unpaid balance of the purchase money of the whole, declaring upon the agreement as so altered. The vendee's objection that the agreement, in order to charge him upon it, must be wholly in writing, was sustained, on the ground that the effect of such waiver was to substitute a different contract for the one in writing, and by the statute of frauds the particular contract must be in writing.

In *Stead* v. *Dawber*, 10 Ad. & El. 57, a written contract to sell and deliver by a certain date a certain cargo was orally varied by extending the time of delivery. It was held that as the contract was within the statute it could not be proved, as to any essential part of it, by oral testimony, "for to allow such a contract to be proved partly by writing and partly by oral testimony would let in all the mischiefs which it was the object of the statute to exclude." The same doctrine is announced in *Marshall* v. *Lynn*, 6 M. & W. 109, where the time fixed for the delivery of goods sold under a written contract was extended by parol. And the same rule is announced in *Harvey* v. *Grabham*, 5 Ad. & El. 61, where a written agreement to lease land was orally varied as to the method of valuing certain straw, etc., reserved to the lessor.

In commenting upon these English cases Mr. Browne, in his work on the Statute of Frauds (4th ed.) §415, says: "The ground upon which the cases just cited were all decided is this: that the plaintiff sued upon a contract which the statute of frauds required to be in writing, but which in fact was partly in writing and partly in parol; and that although originally put in writing, and varied only as to the manner of performance, still the suit could not be said to be upon the original written contract, but upon a new contract made out by incorporating therewith certain oral stipulations."

In the case at bar the oral agreement to change the prem-

City of Michigan City *v.* Leeds.

ises as designated in the written contract made a new con-
tract, which was a contract in parol. So far as payment of
rent was concerned, the provisions of the written lease seem
to have been followed under the parol contract, and rent was
paid, as formerly, every three months. But it cannot be
said that this parol contract took the place of the written
lease, because, being for a period exceeding three years, it
was within the statute of frauds. §6629 Burns 1894, §4904
Horner 1897.

Although the rent was paid every three months, there is
no express agreement, nor is there sufficient to imply an
agreement, between the parties that the tenancy should be
of three months' duration. The premises were occupied
with the express consent of the landlord, the rent being pay-
able quarterly at a certain rate per month, and, as there
was no agreement as to how long the tenancy should con-
tinue, it became a general tenancy, as recognized by the
statute, and as such tenancy it is deemed to be, under the
statute, a tenancy from year to year. §7089 Burns 1894,
§5208 Horner 1897; *Elliott* v. *Stone City Bank*, 4 Ind.
App. 155; *Rothschild* v. *Williamson*, 83 Ind. 387; *Nash* v.
*Berkmeir*, 83 Ind. 536; *Kleespies* v. *McKenzie*, 12 Ind.
App. 404; *People* v. *Rickert*, 8 Cow. 226; *Tress* v. *Savage*,
82 Com. Law 36, 4 Ellis & B 36.

Under the evidence, the tenancy was from year to year,
beginning when the change in the premises took place, and,
as the premises were surrendered, appellee was entitled to
rent only up to the end of the first year. The motion for a
new trial should have been sustained. Judgment reversed.